## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN SHANAWAZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTELLIPHARMACEUTICS INTERNATIONAL INC., ISA ODIDI and DOMENIC DELLA PENNA.<br><br>Defendants. | Case No. 17-cv-5761<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Shawn Shanawaz ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Intellipharmaceutics International Inc. ("Intellipharmaceutics" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

### NATURE OF THE ACTION

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Intellipharmaceutics common stock between January 14, 2016 and July 26, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Intellipharmaceutics is a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs.

3.     The Company's main product candidate is Rexista, an abuse-deterrent oxycodone hydrochloride extended release tablets. Rexista is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

4.     The Company made materially false and/or misleading statements regarding its New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") seeking authorization to market its Rexista product.

5.     As the truth was fully revealed to investors, the Company's share price declined from $2.50 per share of Intellipharmaceutics stock on July 26, 2017, to close at $1.36 per share on July 27, 2017, *a drop of approximately 45.6%.*

6.     As a result of the fraudulent conduct alleged herein, Plaintiff and other members of the Class purchased Intellipharmaceutics securities at artificially inflated prices and suffered significant losses and damages once the truth emerged.

## JURISDICTION AND VENUE

7.     The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient

minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

## PARTIES

10.     Plaintiff purchased Intellipharmaceutics common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

11.     Defendant Intellipharmaceutics is incorporated in Canada and headquartered at 30 Worcester Road Toronto, Ontario M9W 5X2. Intellipharmaceutics' common stock trades on the NASDAQ under the ticker symbol "IPCI."

12.     Defendant Isa Odidi ("Odidi") was the Company's Chief Executive Officer ("CEO") and Chairman of the Board at all relevant times.

13.     Defendant Domenic Della Penna ("Penna") was the Company's Chief Financial Officer ("CFO"), and Principal Financial Officer at all relevant times.

14.     Defendants in paragraphs 12-13 are collectively referred to herein as the "Individual Defendants."

15.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or

disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

16.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Intellipharmaceutics' business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

17.     As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual

Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Intellipharmaceutics' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

19.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Intellipharmaceutics common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Intellipharmaceutics' business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Intellipharmaceutics securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.   Company Background

20.   Intellipharmaceutics is a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs.

21.   The Company's main product candidate is Rexista, an abuse-deterrent oxycodone hydrochloride extended release in tablet form. Rexista is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

### B.   Material Misstatements and Omissions during the Class Period

22.   The Class Period begins on January 14, 2016, when Intellipharmaceutics issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the results of its pivotal bioequivalence trials of Rexista™ Oxycodone XR ("January 2016 Press Release"). The Company made material misrepresentations in the press release, including in pertinent part:

> **Intellipharmaceutics Announces Successful Bioequivalence Results for Abuse Deterrent Rexista™ Oxycodone XR**
>
> TORONTO, January 14, 2016 (GLOBE NEWSWIRE) - - **Intellipharmaceutics International Inc.** (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that pivotal bioequivalence trials of the Company's Rexista™ Oxycodone XR (abuse deterrent oxycodone hydrochloride) extended release tablets, dosed under fasted and fed conditions, had demonstrated bioequivalence to Oxycontin® (oxycodone hydrochloride) extended release tablets as manufactured and sold in the United States by Purdue Pharma LP. The study design was based on United States Food and Drug Administration ("FDA") recommendations and compared the lowest and highest strengths of exhibit batches of the Company's

6

Rexista™ Oxycodone XR to the same strengths of Oxycontin®. The results show that the ratios of the pharmacokinetic metrics, $C_{max}$, $AUC_{0-t}$ and $AUC_{0-f}$ for Rexista™ vs. Oxycontin®, are within the interval of 80% - 125% required by the FDA with a confidence level exceeding 90%.

The Company had earlier announced, in March 2015, that topline data results of three definitive Phase I pharmacokinetic clinical trials (single dose fasting, single dose steady-state fasting, and single dose fed), conducted on pilot batches of the Company's Rexista™ Oxycodone XR, all met the FDA bioequivalence criteria when compared to the existing branded drug Oxycontin®.

***The Company had also earlier announced, in May 2015, that the FDA had provided the Company with notification regarding its Investigational New Drug Application ("IND") submission for Rexista™ Oxycodone XR. The notification from the FDA had stated that the Company would not be required to conduct Phase III studies if bioequivalence to Oxycontin® was demonstrated.***

Having now demonstrated such bioequivalence for its Rexista™ Oxycodone XR product to be marketed upon FDA approval, the Company intends to complete the regulatory filing requirements and file a New Drug Application ("NDA") for Rexista™ Oxycodone XR with the FDA within the next 6 months in accordance with the NDA 505(b)(2) regulatory pathway. There can be no assurance that the FDA will ultimately approve the NDA for the sale of Rexista™ Oxycodone XR in the U.S. market, or that it will ever be successfully commercialized.

***"We take great pride in being the first pharmaceutical company, to the best of our knowledge, to have demonstrated bioequivalence in both fasted and fed conditions to the brand reference drug Oxycontin®. This enables us to accelerate the development and commercialization of our abuse deterrent Rexista™ Oxycodone XR product candidate without the need for costly and time-consuming Phase III efficacy trials***," stated Dr. Isa Odidi, CEO and co-founder of Intellipharmaceutics. "We look forward to filing an NDA within the next six months, which we hope will lead to a positive contribution in addressing an unmet need in opioid abuse and addiction."

Emphasis added.

23.     On November 25, 2016, Intellipharmaceutics issued a press release, also attached

as exhibit 99.1 to the Form 8-K filed with the SEC announcing that it had filed a New Drug

Application ("NDA") with the U.S. Food and Drug Administration ("FDA") seeking authorization

to market its Rexista ("November 2016 Press Release"). The Company made material misrepresentations in the press release, including in pertinent part:

### Intellipharmaceutics Submits New Drug Application for Rexista® (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain

TORONTO, November 25, 2016 (GLOBE NEWSWIRE) - - Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics' or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that it has filed a New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") seeking authorization to market its Rexista® abuse-deterrent oxycodone hydrochloride extended release tablets in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg strengths.

Rexista® is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. *The submission is supported by pivotal pharmacokinetic studies that demonstrated that Rexista® is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes a comprehensive array of abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of drug by oral, intra-nasal and intravenous pathways, having reference to the FDA's "Abuse-Deterrent Opioids – Evaluation and Labelling" guidance published in April 2015.*

*The abuse-deterrent properties incorporated into Rexista® are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse via common routes of administration including: ingestion following chewing, licking or crushing; insufflation; inhalation; or injection.* If approved, Rexista® may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused. The Company previously announced the results of a food effect study which showed that Rexista® can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.

As previously announced the FDA, under the small business waiver provision of the Federal Food, Drug, and Cosmetics Act, granted the Company a waiver of the $1,187,100 application fee for Rexista®.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "The NDA submission of Rexista® represents a critical milestone and turning point for the Company. This is our first NDA submission and *the first abuse-deterrent oxycodone product candidate we are aware of that not only resists common forms of abuse but provides a preventive tool that may flag early warning of abuse.* We are excited about the prospect of Rexista®, if approved, having a positive impact in addressing the opioid epidemic. *We believe our suite of abuse-deterrent and overdose prevention technologies are best in class and we look forward to further expanding our development program for abuse-deterrent pain and other medications.* The Company has identified potential manufacturing partners and is currently evaluating various manufacturing options for Rexista® in the U.S. We look forward to working with the FDA during their review of our NDA submission."

(Emphasis added.)

24.     On February 2, 2017, Intellipharmaceutics issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing that Rexista's NDA had been accepted by the FDA for substantial review ("February 2017 Press Release"). The press release stated in pertinent part:

### Intellipharmaceutics Announces FDA Acceptance for Filing of NDA for Rexista™ (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain

TORONTO, February 2, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that the U.S. Food and Drug Administration ("FDA") has accepted for filing the Company's previously-announced New Drug Application ("NDA") seeking authorization to market its Rexista™ abuse-deterrent oxycodone hydrochloride extended release tablets in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg strengths.  The FDA has determined that the Company's application is sufficiently complete to permit a substantive review, and has set a target action date under the Prescription Drug User Fee Act ("PDUFA") of September 25, 2017.

Rexista™ is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. ***The submission is supported by pivotal pharmacokinetic studies that demonstrated that Rexista™ is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labelling" guidance published in April 2015.***

***The abuse-deterrent properties incorporated into Rexista™ are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse via common routes of administration including: ingestion following chewing, licking or crushing; insufflation; inhalation; or injection.*** If approved, Rexista™ may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused. The Company previously announced the results of a food effect study which showed that Rexista™ can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "***The acceptance of filing of our NDA for Rexista™ represents an important step towards the commercialization of a potentially best–in–class abuse-deterrent oxycodone hydrochloride extended release product.*** We look forward to working with the FDA during their review of our NDA submission."

There can be no assurance that we will not be required to conduct further studies for Rexista™, that the FDA will ultimately approve the NDA for the sale of Rexista™ in the U.S. market, or that it will ever be successfully commercialized.

Emphasis added.

25.     On February 28, 2017, filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended November 30, 2016 ("2016 20-F"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. The 20-F stated in pertinent part:

**Recent Corporate Developments**

\*        \*        \*

● In February 2017, the FDA accepted for filing the NDA we filed in November 2016 seeking authorization to market our Rexista™ product candidate (abuse-deterrent oxycodone hydrochloride extended release tablets) in the 10, 15, 20, 30, 40, 60 and 80 mg strengths. The FDA has determined that our application is sufficiently complete to permit a substantive review, and has set a target action date under the Prescription Drug User Fee Act ("**PDUFA**") of September 25, 2017. Rexista™ is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. ***The submission is supported by pivotal pharmacokinetic studies that demonstrated that Rexista™ is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labeling" guidance published in April 2015.***

Emphasis added.

26.    On June 30, 2017, Intellipharmaceutics issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing a FDA Advisory Committee Meeting for Rexista ("June 2017 Press Release"). The press release stated in pertinent part:

**Intellipharmaceutics Announces FDA Advisory Committee Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, June 30, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that a joint meeting of the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") has been scheduled for July 26, 2017 to review the Company's New Drug Application ("NDA") for Rexista™ abuse-deterrent oxycodone hydrochloride extended release tablets.

The Company's NDA submission for Rexista™ was accepted for review by the FDA on February 2, 2017.  The FDA set a target action date under the Prescription Drug User Fee Act ("PDUFA") of September 25, 2017.  Rexista™ is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.  The submission is supported by pivotal pharmacokinetic studies that demonstrated that Rexista™ is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labeling" guidance published in April 2015.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "We are very pleased with the progress made towards our goal of securing FDA approval of our Rexista™ NDA candidate.  We look forward to sharing our data and discussing Rexista™ with the members of the Advisory Committees, and in continuing to work closely with the FDA through the review process."

***The abuse-deterrent properties incorporated into Rexista™ are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse.  If approved, Rexista™ may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused.*** The Company previously announced the results of a food effect study which showed that Rexista™ can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.

There can be no assurance that we will not be required to conduct further studies for Rexista™, that the FDA will ultimately approve the NDA for the sale of Rexista™ in the U.S. market, or that it will ever be successfully commercialized.

Emphasis added.

27.    The statements in paragraphs 22-26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that: (1) Intellipharmaceutics

failed to conduct a human abuse liability study to support its Rexista NDA; (2) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; (3) Intellipharmaceutics was not submitting sufficient data to support approval of the Rexista NDA; and (4) as a result of the foregoing, Defendants' statements about Intellipharmaceutics' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### C.     The Truth Emerges

28.     On July 27, 2017, before the market open, Intellipharmaceutics issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing update on the FDA Advisory Committee Meeting for Rexista ("July 2017 Press Release"). The press release stated in pertinent part:

> **Intellipharmaceutics Provides Update on FDA Advisory Committees Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse-Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**
>
> TORONTO, July XX, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that *the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") voted 22 to 1 in finding that the Company's New Drug Application ("NDA") for Rexista™ abuse-deterrent oxycodone hydrochloride extended release tablets should not be approved at this time. The committees also voted 19 to 4 that the Company has not demonstrated that Rexista™ has properties that can be expected to deter abuse by the intravenous route of administration, and 23 to 0 that there are not sufficient data for Rexista™ to support inclusion of language regarding abuse-deterrent properties in the product label for the intravenous route of administration.*

*The committees expressed a desire to review the additional safety and efficacy data for RexistaTM that may be obtained from human abuse potential studies for the oral and intranasal routes of administration.* Accordingly, the Company intends to conduct Category 3 abuse potential studies to provide the data the Company believes necessary to support abuse-deterrent properties of RexistaTM for the oral and intranasal routes, which are required for abuse-deterrent labeling claims for such routes. *The Company has an FDA approved protocol for a human abuse potential study for the intranasal route of abuse, which it plans on commencing in the coming weeks.*

RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.  The FDA is not bound by the advisory committees' recommendation, but will consider their guidance as it continues its review of RexistaTM.   The FDA set a Prescription Drug User Fee Act (PDUFA) goal date of September 25, 2017 for completion of its review of our RexistaTM NDA candidate.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "While we are disappointed with the Committees' overall vote, we will endeavor to remedy the concerns raised by completing the necessary human abuse potential studies in relation to the intranasal and oral routes of abuse.  We will continue to work with the FDA in progressing this file over the next few weeks as we approach the September 25, 2017 PDUFA date."

There can be no assurance that we will not be required to conduct further studies for RexistaTM, that the FDA will approve any of the Company's requested abuse-deterrent label claims or that the FDA will ultimately approve the NDA for the sale of RexistaTM in the U.S. market, or that it will ever be successfully commercialized.

Emphasis added.

29.     In fact, the report issued by the Anesthetic and Analgesic Drug Products Advisory

Committee and Drug Safety and Risk Management Advisory Committee of the FDA which

became available the same day ("July 2017 FDA Report"), itself discloses states in relevant part:

"*The safety information collected in the pharmacokinetic studies was of limited value due to the fact that these were generally single-dose studies* (except one multiple dose study) conducted in healthy volunteers who were naltrexone-blocked. *There were no human abuse liability studies submitted with the NDA. No new safety signals were identified during*

*the review of the oxycodone ER tablets application beyond what is already known for oxycodone products*."

Emphasis added.

30.     On this news, the Company's share price declined from $2.50 per share of Intellipharmaceutics stock on July 26, 2017, to close at $1.36 per share on July 27, 2017, *a drop of approximately 45.6%.*

## SCIENTER ALLEGATIONS

31.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Intellipharmaceutics, their control over, and/or receipt and/or modification of Intellipharmaceutics allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Intellipharmaceutics, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

32.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Intellipharmaceutics' misconduct and its lack of operational and financial controls was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Intellipharmaceutics'

share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

33.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Intellipharmaceutics' business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Intellipharmaceutics' common stock to be artificially inflated. Plaintiff and other Class members purchased Intellipharmaceutics' common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

34.     At all relevant times, the market for Intellipharmaceutics common stock was an efficient market for the following reasons, among others:

(a) Intellipharmaceutics common stock met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b) During the Class Period, Intellipharmaceutics common stock were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Intellipharmaceutics filed with the SEC periodic public reports during the Class Period;

(d) Intellipharmaceutics regularly communicated with public investors via established market communication mechanisms;

(e) Intellipharmaceutics was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Intellipharmaceutics was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

35.     As a result of the foregoing, the market for Intellipharmaceutics common stock promptly digested current information regarding Intellipharmaceutics from all publicly available sources and reflected such information in Intellipharmaceutics' stock price. Under these circumstances, all purchasers of Intellipharmaceutics common stock during the Class Period suffered similar injury through their purchase of Intellipharmaceutics' common stock at artificially inflated prices, and a presumption of reliance applies.

36.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell

17

the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Intellipharmaceutics.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

37.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

38.   To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

39.   Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Intellipharmaceutics who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

40.   Plaintiff brings this action on behalf of all individuals and entities who purchased

or otherwise acquired Intellipharmaceutics common stock on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

41.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Intellipharmaceutics securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Intellipharmaceutics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of July 14, 2017, Intellipharmaceutics had more than 30 million outstanding shares of common stock. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

43.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

> (a)  whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

> (b)  whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

> (c)  whether the price of Intellipharmaceutics securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

> (d)  whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

46.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Intellipharmaceutics common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

48.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Intellipharmaceutics securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Intellipharmaceutics as specified herein.

50.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Intellipharmaceutics' value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Intellipharmaceutics and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Intellipharmaceutics common stock during the Class Period.

51.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

52.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Intellipharmaceutics' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Intellipharmaceutics' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Intellipharmaceutics' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Intellipharmaceutics' common stock during the Class Period at artificially high prices and were or will be damaged thereby.

54.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Intellipharmaceutics' financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Intellipharmaceutics securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

55.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

57.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

## COUNT II
### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Intellipharmaceutics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

60.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Intellipharmaceutics, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

62.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

63.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a jury trial.

Dated: July 28, 2017

/s/ Adam M. Apton
**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt
Adam M. Apton
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email:nporritt@zlk.com
Email:aakrot@zlk.com