**KAHN SWICK & FOTI, LLC**
Kim E. Miller (NY-6996)
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
lewis.kahn@ksfcounsel.com
craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiffs and the
Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHAWN SHANAWAZ, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:17-cv-05761 |
| Plaintiff, | HON. J. PAUL OETKEN |
| vs. | |
| INTELLIPHARMACEUTICS INTERNATIONAL INC., ISA ODIDI and DOMENIC DELLA PENNA, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
<u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

Page:

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 1

    A.      Procedural and Factual Background............................................................. 1

    B.      Reasons for Settlement ................................................................................ 5

III.    TERMS OF THE SETTLEMENT ......................................................................... 6

IV.     THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY
    APPROVAL UNDER RULE 23(e) ....................................................................... 6

    A.      The Settlement is the Product of Arm's-Length Negotiations
         Among Experienced Counsel ....................................................................... 7

    B.      The Settlement Falls Within the Range of What is Fair, Reasonable
         and Adequate ................................................................................................. 8

         1.      The Complexity, Expense and Likely Duration
              of the Litigation.............................................................................. 9

         2.      The Reaction of the Class to the Settlement ............................... 11

         3.      The Stage of the Proceedings....................................................... 11

         4.      The Risk of Establishing Liability and Damages ....................... 12

         5.      The Risks of Maintaining the Class Action Through Trial........ 13

         6.      The Ability of Defendants to Withstand a Greater Judgment..... 13

         7.      The Reasonableness of the Settlement in Light of the
              Best Possible Recovery and Attendant Risks of Litigation ....... 13

V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED.................................. 15

    A.      The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied ........................ 16

         1.      Numerosity ................................................................................... 16

         2.      Commonality................................................................................. 16

         3.      Typicality ..................................................................................... 17

         4.      Adequacy of Representation ........................................................ 18

    B.      The Requirements of Rule 23(b)(3) Are Satisfied ................................... 19

         1.      Common Questions Predominate ................................................. 19

         2.      A Class Action is Superior to Numerous Individual Actions .................. 20

    C.      KSF Should Be Appointed Class Counsel Under Rule 23(g) ............................. 21

VI.     THE PROPOSED NOTICE TO THE CLASS SATISFIES RULE 23
    AND DUE PROCESS REQUIREMENTS ......................................................... 22

    A.      The Mechanics of the Proposed Notice Program ..................................... 22

    B.      The Scope of the Notice Program Is Adequate ........................................ 23

i

     C.     The Proposed Form of Notice Comports With the Requirements
of Due Process, the PSLRA, and FRCP 23 ........................................................ 24

VII.   PROPOSED TIMELINE OF EVENTS ............................................................................ 25

VIII.  CONCLUSION ....................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases**

*Amchem Product, Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................. 18, 22, 23

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) .................................................................................... 20

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) .................................................................................... 18

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................... 8

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ...................................................................................... 18

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................................... 10

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................... 14

*Genden v. Merrill Lynch, et al.*,
  114 F.R.D. 48 (S.D.N.Y. 1987) .............................................................................. 23

*Gerber v. Computer Assocs. Int'l*,
  No. 91-CV-3610, 1995 U.S. Dist. LEXIS 21142 (E.D.N.Y. Apr. 7, 1995) ........... 19

*Holden v. Burlington N., Inc.*
  665 F. Supp. 1398 (D. Minn. 1987) ........................................................................ 7

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................ 15

*In re Alloy, Inc., Sec. Litig.*,
  No. 03-CV-1597, 2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) ............ 10

*In re Amerifirst Sec. Litig.*,
  139 F.R.D. 423 (S.D. Fla. 1991) ............................................................................ 19

*In re AOL Time Warner, Inc., Sec. & ERISA Litig.*,
  No. 02-CV-5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ............ 10

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95-CV-3431, 1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. Apr. 30, 1999) .......... 23

*In re Ashanti Goldfields Sec. Litig.*,
  No. 00-CV-0717, 2004 U.S. Dist. LEXIS 5165 (E.D.N.Y. Mar. 30, 2004) ........... 17

*In re Avon Sec. Litig.*,
  No. 91-CV-2287, 1998 U.S. Dist. LEXIS 18642 (S.D.N.Y. Nov. 30, 1998) .......... 18

*In re Baldwin-United Corp. Litig.*,
    122 F.R.D. 424 (S.D.N.Y. 1986). ................................................... 21

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ..................................................... 25

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
    228 F.R.D. 541 (S.D. Tex. 2005) ................................................... 16

*In re First Commodity Corp. of Boston Customer Accounts Litig.*,
    119 F.R.D. 301 (D. Mass. 1987) .................................................... 23

*In re Frontier Ins. Group Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997) ..................................................... 20

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................... 12, 16, 28

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00-CV-6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003).......................... 13

*In re Initial Pub. Offering Sec. Litig. ("IPO")*,
    471 F.3d 24 (2d Cir. 2006)......................................................... 17

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) .................................................. 7, 9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02-MDL-1484, 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007). ........................... 27

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993). ................................................ 8, 13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................... 7

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    No. 99-CV-0962, 2006 U.S. Dist. LEXIS 87825 (S.D.N.Y. Dec. 4, 2006). ........................... 28

*In re Take Two Interactive Secs. Litig.*,
    No. 06-CV-0803, 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010). ....................... 28

*In re United Health Group Inc. PSLRA Litig.*,
    643 F. Supp. 2d 1094 (D. Minn. 2009) .............................................. 14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)........................................................ 15

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir. 1972)....................................................... 17

*Lane v. Page*,
    250 F.R.D. 634 (D.N.M. 2007)....................................................... 27

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)....................................................... 23

iv

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)........................................................................................... 26

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004). ............................................................................ 7

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)................................................................................ 15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)........................................................................................... 24

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011)................................................................................ 20

*Strougo v. Bassini*,
  258 F.Supp.2d 254 (S.D.N.Y. 2003)................................................................... 11

*Tart v. Lions Gate Entm't Corp.*,
  No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) ......... 21

*Thomas v. NCO Fin. Sys., Inc.*,
  No. 00-CV-5118, 2002 U.S. Dist. LEXIS 14157 (E.D. Pa. Aug. 1, 2002) .............. 7

*Thomas v. NCO Fin. Sys.*,
  No. 00-CV-5118, 2004 U.S. Dist. LEXIS 5405 (E.D. Pa. Mar. 31, 2004).............. 27

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1987). ............................................................................. 6

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
  No. 10-CV-0864, 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) .......... 29

*Weinberger v. Kendrick*,
  698 F. 2d 61 (2d. Cir. 1982)................................................................................ 26

**Other Authorities**

James Wm. Moore, MOORE'S FEDERAL PRACTICE, 23.83[1], at 23-336.2 to 23-339 (3d ed. 2001).
  ........................................................................................................................... 8

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). ................................. 6, 22

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

Rule 10b-5.................................................................................................................. 4

## I.   INTRODUCTION

Lead Plaintiffs David Ducharme, Sam Snyder and Julia Ann Snyder ("Lead Plaintiffs"), through their undersigned counsel, respectfully request preliminary approval of a Settlement with defendants Intellipharmaceutics International Inc. ("Intellipharmaceutics" or the "Company"), Dr. Isa Odidi,("Odidi") and Domenic Della Penna ("Della Penna") for a total cash payment of $1,600,000 pursuant to the terms set forth in the accompanying Stipulation of Settlement ("Stipulation").[1] The Settlement was reached after well-informed and extensive arm's-length negotiations between and among highly experienced counsel and facilitated by private mediation with a qualified mediator, Michelle Yoshida of Phillips ADR. As a result of this process and for the reasons detailed below, Plaintiffs believe that this settlement is fair, reasonable and adequate and should be preliminarily approved.

By this motion, Plaintiffs seek entry of an order: (1) granting preliminary approval of the proposed settlement; (2) certifying the class for settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) approving the forms for mailed and published notice of the Settlement; (4) authorizing the mailing and publication of these notices; and (5) setting a date and time for the fairness hearing with respect to the proposed Settlement and Plan of Allocation.

## II.   BACKGROUND

### A.   Procedural and Factual Background

This putative class action commenced on July 28, 2017 upon the filing of a Class Action Complaint against Defendants Intellipharmaceutics, Odidi and Della Penna, styled *Shawn Shanawaz v. Intellipharmaceutics International Inc., Isa Odidi and Domenic Della Penna*, No. 17-cv-5761 (S.D.N.Y.), on behalf of those who purchased or otherwise acquired Intellipharmaceutics common stock between January 14, 2016, and July 26, 2017, alleging violations the Securities

---

[1] Defendants Odidi and Della Penna are referred to herein as the "Individual Defendants."

Exchange Act of 1934 (the "Exchange Act"). On July 31, 2017, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notice of the complaint's filing was published over *BusinessWire*. Thereafter, two more complaints were filed alleging similar facts and claims with an expanded Class Period of May 21, 2015 through July 26, 2017.[2]

On September 29, 2017, Plaintiffs David Ducharme, Sam Snyder and Julia Ann Snyder filed a Motion to Consolidate Related Actions, to Be Appointed Lead Plaintiffs and to Approve Proposed Lead Plaintiffs Choice of Counsel. On November 21, 2017, the Court consolidated the related actions, appointed Mr. Ducharme, Mr. Snyder and Mrs. Snyder Lead Plaintiffs and approved Lead Plaintiffs' selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel in the Action.

Plaintiffs' counsel conducted an extensive investigation of Intellipharmaceutics and the Individual Defendants' conduct that formed the allegations of the initial complaint and its subsequent amendment. This investigation included: the retention of and coordination with private investigators; interviews of numerous persons with knowledge of the allegations, including former employees of Intellipharmaceutics as well as third parties; consultation with experts on the issues of damages and market efficiency; a thorough review of the Company's annual reports, press releases, and financial statements; thorough review of myriad news articles and analysis reports; and other factual and legal research, including substantial research on complex issues in preparation for the filing of the amended complaint.

The claims arise from alleged misrepresentations and omissions made by Intellipharmaceutics and the Individual Defendants regarding the promise of Rexista, Rexista's

---

[2]*Braverman v. Intellipharmaceutics International, et al.,* No. 1:17-cv-6045 (S.D.N.Y.) (filed August 10, 2017) and *Ducharme v. Intellipharmaceutics International Inc., et al.,* No. 1:17-cv-66210(S.D.N.Y.) (filed August 30, 2017).

New Drug Application ("NDA"), Rexista's abuse-deterrent properties, and the clinical studies and trials by which Intellipharmaceutics purportedly established Rexista's abuse-deterrent properties. More specifically, the Amended Complaint alleges, *inter alia*, that the Defendants failed to complete two of the three FDA-recommended categories of testing for abuse-deterrent opioids and failed to test for nasal and oral routes of abuse before making statements regarding Rexista's abuse-deterrent properties. Additionally, the Company stated that during pivotal testing, Rexista demonstrated bioequivalence to Oxycontin, which would allow the Company to accelerate development and commercialization of the drug. However, because the Company did not conduct studies in accordance with the FDA Guidance, it could not demonstrate bioequivalence to Oxycontin.

On January 29, 2018, Plaintiffs filed the Amended Complaint. Defendants moved to dismiss the Amended Complaint on March 30, 2018. Plaintiffs filed their opposition to the Motion to Dismiss on May 31, 2018 and Defendants submitted a reply brief in support of their Motion to Dismiss on June 29, 2018. On December 17, 2018, the Court granted in part and denied in part Defendants' Motion to Dismiss, dismissing Plaintiffs' Section 10(b) and Section 20(a) claims with respect to the Company's statements about Rexista's bioequivalency to Oxycontin and Defendants' statements about Rexista's oral and nasal abuse-deterrent features. The Court denied the motion with respect to Plaintiffs' 10(b) and 20(a) claims with respect to Defendants' statements about the contents of the Rexista NDA.

The Class includes persons who purchased or otherwise acquired Intellipharmaceutics common stock between May 21, 2015 and July 27, 2017 (the "Class Period"). Plaintiffs allege that Defendants' materially misleading misrepresentations and omissions artificially inflated Intellipharmaceutics' stock price, in violation of §10(b) of the Securities Exchange Act of 1934

(the "Exchange Act"), and Rule 10b-5 promulgated thereunder. Plaintiffs further allege that as a direct and proximate cause of Defendants' misrepresentations and omissions, Intellipharmaceutics common stock shareholders suffered losses in the market value of their investments when the truth was revealed, and the artificial inflation from Class Period misrepresentations and omissions was removed.

Defendants deny all allegations of wrongdoing and insist that they have no liability. They argue that the case should be dismissed because: (1) that the Complaint did not plausibly allege that any challenged statement was materially false or misleading when made; (2) that the Complaint did not plead facts giving rise to the required "strong inference" of scienter; and (3) that because the Complaint did not sufficiently plead the primary violation, the "control person" claims against the Individual Defendants should be dismissed.

After the Court denied Defendants' Motion to Dismiss, Lead Plaintiffs and Intellipharmaceutics participated in a private mediation before mediator Michelle Yoshida of Phillips ADR on August 1, 2019. Following extensive arm's-length negotiations facilitated by Ms. Yoshida, discussed herein at section IV.A, the Parties reached an agreement in principle to settle the litigation, which releases all Defendants from all claims in exchange for $1.6 million in cash to be paid by Intellipharmaceutics' insurers. The Parties also drafted and negotiated the terms of the Stipulation and supporting exhibits, including the "Contribution Agreement," which were executed on November 4, 2019. If the conditions of the Contribution Agreement are met within 18 months after final approval of settlement, the Company will contribute up to $400,000 in cash from certain tax reimbursements identified in the Contribution Agreement, thus resulting in a combined Settlement of up to $2 million. In the event the conditions of the Contribution Agreement are not met within 18 months, no such Company contribution will be made.

### B.      Reasons for Settlement

Plaintiffs have thoroughly investigated the claims in this case and retained outside investigation specialists to assist. Plaintiffs have conducted interviews with former employees of the Company and others with knowledge of the allegations as well as a thorough review and analysis of market analyst reports, FDA Committee Meeting reports, minutes and other documents, news articles and SEC filings. Plaintiffs have attained a detailed understanding of the strengths and weaknesses of their factual allegations, claims and the damages suffered by the Class. Furthermore, Plaintiffs' counsel has devoted a substantial amount of time researching and analyzing the law in connection with the complex legal issues presented in this case. Based on this understanding, as well as the briefing on the Defendants' Motion to Dismiss, the Defendants' Reply, The Court's Order on Defendants' Motion to Dismiss, and settlement negotiations during Mediation, Plaintiffs were able to assess the viability of the defenses proffered by the Defendants. The Stipulation provides a significant all-cash benefit for the Class and eliminates the substantial risk that continued litigation may result in a smaller or possibly no recovery at all.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs in the case. Nevertheless, Defendants concluded that it is desirable to fully and finally resolve this Litigation in the manner and on the terms set forth in the Stipulation. For Defendants, resolution of the Litigation limits further expense and inconvenience with respect to the matters at issue in this case. Defendants have also taken into account the uncertainty and risks inherent in any litigation. Based on this assessment, Defendants have determined that is desirable and beneficial to settle this Litigation as set forth in the Stipulation.

Plaintiffs submit that the proposed Settlement is sufficiently within the range of possible approval to warrant this motion for preliminary approval.

### III.     TERMS OF THE SETTLEMENT

The Parties have entered into an agreement that resolves all claims in this Litigation as to all Defendants. The Settlement provides a benefit to the Class in the amount $1,600,000.00 in cash. As noted above, moreover, if the conditions of the Contribution Agreement are met within 18 months after final approval of settlement, the Company will contribute up to $400,000 in cash from certain tax reimbursements identified in the Contribution Agreement, thus resulting in a combined Settlement of up to $2 million.

### IV.     THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Under Rule 23(e), a court must review any "settlement, voluntary dismissal, or compromise" of the "claims, issues or defenses of a certified class." Fed. R. Civ. P. 23(e). Because "[t]he object of settlement is to avoid, not confront, the determination of contested issues…the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1987).

The procedure for review of a proposed class action settlement is a well-established two-step process. *See* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). First, the Court conducts a preliminary hearing or inquiry,[3] the purpose of which is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* § 21.632 at 320-21. If the Court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard at a final fairness hearing concerning the merits of the settlement. *Id.* § 21.633-634 at 321-322.

"Where the proposed settlement appears to be the product of serious, informed,

---

[3] While a hearing is required at the final fairness stage to allow Class members an opportunity to object to the settlement, the plan of allocation, and/or the fee and expense request, no hearing is necessary at the preliminary approval stage unless the Court so requires.

noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). At the preliminary approval stage, the court does not make a final determination of the merits of the proposed settlement. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995); *Thomas v. NCO Fin. Sys., Inc.*, No. 00-CV-5118, 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. Aug. 1, 2002). Rather, "[a]t this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval.'" *In re Prudential*, 163 F.R.D. at 210 (citation omitted). At the preliminary approval stage the court should consider two factors in making its determination whether approval is warranted: 1) the extent of informed, arms-length negotiations between the parties; and 2) whether the resulting Settlement is within the range of what might be found fair, reasonable, and adequate. *See e.g., Holden v. Burlington N., Inc.* 665 F. Supp. 1398, 1402 (D. Minn. 1987); *Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004). Indeed, a strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations. Courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

In this case, the proposed Settlement meets the standard for preliminary approval established by the Second Circuit and therefore fully merits this Court's preliminary approval.

**A.     The Settlement is the Product of Arm's-Length Negotiations Among**

### Experienced Counsel

The Settlement is the result of extensive, arm's-length negotiations conducted by experienced counsel for all parties and mediated by a qualified full-time mediator working for a highly reputable firm, Phillips ADR. Shortly after the Court issued its Opinion and Order regarding Defendants' Motion to Dismiss, Plaintiffs and Defendants attempted to mediate on May 2019, but those plans did not come to fruition due to Intellipharmaceutics' inability to secure funding sufficient to potentially contribute a share to the settlement. However, the Parties continued mediation discussions and eventually engaged in mediation with Ms. Yoshida in New York City in an attempt to find a resolution to the Litigation. Ms. Yoshida is a highly qualified mediator with over ten years of experience and has been involved in the mediations of over five hundred disputes. Pursuant to her instructions, the Parties provided Ms. Yoshida with submissions detailing what the parties believed were the relevant facts and applicable legal principles prior to the mediation. On August 1, 2019, the Parties conducted mediation during which counsel made detailed oral presentations addressing, *inter alia*: (a) whether Intellipharmaceutics common stock traded in an efficient market; (b) the alleged misleading statements and omissions; (c) scienter; and (d) the amount of recoverable damages and the methodology employed in calculated those damages. Following the mediation, the Parties reached an agreement in principle to settle the litigation as to all Defendants and all claims. The details of the settlement are contained in the Stipulation and attached exhibits. Because this Settlement was reached through arm's-length negotiations, among experienced counsel under the direction of a qualified, experienced mediator, and there is no evidence of collusion or bad faith, this Court should preliminarily approve this settlement. *See In re IPO Sec. Litig.*, 226 F.R.D. at 191.

### B.     The Settlement Falls Within the Range of What is Fair, Reasonable

**and Adequate**

Preliminary approval of a settlement does not require that the Court make a final determination regarding the fairness, reasonableness and adequacy of the Settlement; that decision is made at the final approval stage, after notice of the settlement is provided to class members and they have had an opportunity to voice their views or to exclude themselves from the settlement. *See* 5 James Wm. Moore, MOORE'S FEDERAL PRACTICE, 23.83[1], at 23-336.2 to 23-339 (3d ed. 2001). Nevertheless, a preliminary review of the factors evaluated for final approval of the Settlement supports preliminary approval here.

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). For the following reasons, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

1.   The Complexity, Expense and Likely Duration of the Litigation

Courts have consistently recognized the complexity, expense, and likely duration of litigation as critical factors in evaluating the reasonableness of a settlement, especially in securities class action cases. *See e.g., In re Alloy, Inc., Sec. Litig.*, No. 03-CV-1597, 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *In re AOL Time Warner, Inc., Sec. & ERISA Litig.*, No. 02-CV-5575, 2006 U.S. Dist.

LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (due in part to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case involves a number of unique issues that make it complex and susceptible to appellate review. Defendants' Motion to Dismiss the Complaint has been ruled upon, with some of Plaintiffs' claims dismissed and some still actionable. The Parties have already begun the long discovery process, and should it continue, it would result in further expense of time and resources, including the production and analysis of vast quantities of relevant documents, depositions, interrogatories, and third-party discovery. This would likely be followed with the completion of expert discovery, briefing on motions for summary judgment, designation of witnesses and exhibits, preparation of pre-trial memoranda and proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial, and, depending on the trial court's ruling on the merits, briefing of the losing party's almost-certain appeal. If the case proceeded to trial, it would be very complicated for jurors, and very expensive for the Class.

It is reasonable to assume that the Defendants would continue their vigorous defense of this case throughout fact and expert discovery, summary judgment, trial and appeal phases of this case. The Settlement obviates the need for numerous discovery and dispositive motions that would likely follow. Moreover, the Settlement, if approved, ensures and advances the recovery to the Class, possibly by as much as three years or more. *See Strougo v. Bassini*, 258 F.Supp.2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time and value of money, make future recoveries less valuable than this current recovery"). Thus, this factor speaks strongly in favor of the preliminary approval

of the proposed Settlement.

2.    The Reaction of the Class to the Settlement

Plaintiffs have actively participated with Counsel throughout the prosecution of their claims and were integrally involved in the decision to enter into this Settlement. Because the Court has not yet preliminarily approved the Settlement, Notice has not yet been distributed to the Class and therefore the reaction of class members cannot be evaluated at this stage. Should any objections be received after the notice is disseminated, they will be addressed by counsel in connection with their motion for final approval of the Settlement.

3.    The Stage of the Proceedings

The volume and substance of Plaintiffs' knowledge of the merits and potential weaknesses of the Class' claims are unquestionably adequate to support the Settlement. This knowledge is based on Plaintiffs' extensive investigation during the prosecution of this action as detailed above. The accumulation of the information discovered through the aforementioned sources and processes permitted Plaintiffs to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions.

By the time the parties entered into an agreement to settle this action, Counsel were extremely knowledgeable of the issues and able to recommend the Settlement to Plaintiffs. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims"). Further, in connection with the settlement, Defendant Intellipharmaceutics produced documentation concerning the allegations of the complaint. Counsel reviewed and analyzed the documentation, confirming the fairness, reasonableness, and adequacy of the settlement.

11

4.      The Risk of Establishing Liability and Damages

The proposed Settlement adequately reflects the value of Plaintiffs' case. Counsel has expended substantial amounts of time and money researching the allegations against Defendants and prosecuting this case. To that end, Plaintiffs are confident regarding their ultimate success in this matter. Nevertheless, there is risk in any litigation, particularly so in a securities class action, which is a notoriously complex area of the law. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *6 (finding that issues present in securities action presented significant hurdles to proving liability); *Michael Milken*, 150 F.R.D. at 65 (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)). Therefore, any prediction of success is far from certain.

Defendants have articulated defenses to Plaintiffs' allegations that could be accepted by the Court or a jury. Among other things, Defendants claimed that Plaintiffs could not establish scienter and damages. If Defendants were successful in convincing the Court of these arguments, the case would be over, with no recovery for the Class. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-CV-6689, 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases). In order to prevail, Plaintiffs would be required to prove that Defendants' alleged false and misleading statements inflated the price of Intellipharmaceutics common stock, as well as the amount of the artificial inflation. Counsel, with the assistance of their damages experts, have preliminarily calculated the damages attributable to Defendants' alleged wrongdoing. However, this figure assumes that every element of the Class's damages theory is accepted by the jury as being correct and recoverable. These risks, when

balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is well within the range of reasonableness.

### 5.   The Risks of Maintaining the Class Action Through Trial

While Plaintiffs believe that the Court would certify the Class, certification can be reviewed and modified at any time before trial. Thus, there is always a risk that the action, or particular claims, might not be maintained as a class through trial. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on motion for class certification], the risk that the case might not be certified is not illusory"). Accordingly, the risks of maintaining the class through trial weigh in favor of this Settlement.

### 6.   The Ability of Defendants to Withstand a Greater Judgment

The Settlement of $1.6 million represents a meaningful percentage of the maximum estimated damages of Plaintiffs' economic consultants. Were the litigation to move forward, Defendants would likely exhaust their coverage under pertinent insurance agreements and be unable to maintain its defense, let alone fund a settlement. The Parties agreed that it was both prudent and economically sound to settle at this stage and not expend additional time, money, and other resources on this litigation. By settling the case now, Defendants are able to put the litigation behind them and move forward and Plaintiffs are able to recover a meaningful percentage of class-wide damages without risking years of litigation and the potential for no ultimate recovery.

### 7.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation

The $1.6 million settlement fund is a substantial recovery given that Plaintiffs' economics consultant estimated maximum total damages for shares acquired from November 25, 2016 through July 26, 2017 (the period for which claims were sustained) to be no more than $12.6 million. Nevertheless, the adequacy of the amount offered in settlement must be judged "not in

comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness," a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).[4] Additionally, in evaluating the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 ("the benefit of the Settlement will…. be realized far earlier than a hypothetical post-trial recovery"). Considering the present time value of money and the risk that the Class would not succeed in proving liability or in establishing loss causation or damages in excess of the Settlement amount, this Settlement is well within the range of reasonableness. *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

Here, as discussed above, Plaintiffs faced numerous legal and procedural hurdles that, if not met, could result in a zero recovery for Plaintiffs and the Class. In light of these challenges, the $1.6 million Settlement is not just reasonable, but a solid recovery for the Plaintiffs and the Class.

---

[4] *See also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery") and *Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *12-*13 (noting few cases tried before a jury result in full amount of damages claimed).

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiffs further request that the Court certify a Class for settlement purposes only which

will consist of:

> All persons or entities who purchased or otherwise acquired Intellipharmaceutics
> common stock in a Covered Transaction at any time from May 21, 2015 through
> and including July 27, 2017 (the "Class Period") and were or may have been
> damaged thereby. Excluded from the Class are Defendants, members of their
> immediate families, and their legal representatives, heirs, successors or assigns.
> "Covered Transaction" means either: (i) a transaction in Intellipharmaceutics
> common stock listed for trading on The NASDAQ Stock Market; or (ii) a
> transaction in Intellipharmaceutics common stock to which the United States
> securities laws apply, including as provided in *Morrison v. National Australia
> Bank*, 561 U.S. 247 (2010). For the avoidance of any doubt, "Covered Transaction"
> shall not include any transaction in Intellipharmaceutics common stock listed for
> trading on the Toronto Stock Exchange (TSX).

Stipulation at ¶ 1.24.

Certification of the Class for settlement purposes only will further the interests of Class

Members and Defendants by allowing this Litigation to be settled on a class-wide basis. Moreover,

for purposes of settlement only, Defendants consent to certification of the Class under Fed. R. Civ.

P. 23(a)(1)-(4) and 23(b)(3). "[A] district judge may certify a class only after making a

determination that each of the Rule 23 requirements has been met…." *In re Initial Pub. Offering

Sec. Litig. ("IPO")*, 471 F.3d 24, 41 (2d Cir. 2006). In making those determinations, the Second

Circuit has instructed courts to be "mindful of the admonition of liberality toward demands for

class suit status in securities litigation." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir.

1972).[5] Pursuant to Fed. R. Civ. P 23(a), class certification is appropriate here because the four

---

[5] *See also In re Ashanti Goldfields Sec. Litig.*, No. 00-CV-0717, 2004 U.S. Dist. LEXIS 5165, at
*32 (E.D.N.Y. Mar. 30, 2004) ("A liberal standard is in accord with the Second Circuit's
preference for the use of class actions in securities law claims.") and *In re Avon Sec. Litig.*, No.
91-CV-2287, 1998 U.S. Dist. LEXIS 18642, at *13 (S.D.N.Y. Nov. 30, 1998) ("In light of the
importance of the class action device in securities litigation, courts in this circuit apply Rule 23
according to a liberal standard.").

prerequisites (numerosity, commonality, typicality and adequacy of representation) are met. *See Amchem Product, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Second, Class certification is appropriate because, pursuant to Fed. R. Civ. P. 23(b)(3), this Litigation involves common issues of law or fact that predominate over individual issues such that the class action is superior to fairly and efficiently adjudicate the Class Members' claims.

### A.     The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

#### 1.     Numerosity

The first requirement of Rule 23(a) is that plaintiff must show that "the class is so numerous that joinder of all members is impracticble." *See* Fed. R. Civ. P. 23(a)(1). Rule 23 does not require joinder to be impossible, but the "difficulty or inconvenience of joining all members of the class [must] make [the] use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-245 (2d Cir. 2007). Numerosity is presumed when a class consists of forty or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Accordingly, "the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met in class action suits, such as the one here, involving nationally traded securities." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991). The proposed Class Members all purchased Intellipharmaceutics common stock over a period of over two years and, potentially, number in the hundreds or thousands, thus making joinder impracticable. Therefore, the numerosity requirement is met.

#### 2.     Commonality

Secondly, the Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Proof of Plaintiffs' claims is necessarily common to all members of the Class. Indeed, in determining whether common questions exist, Rule 23(a)(2) "requires only

that there be 'a common nucleus of operative fact,' not that there be an absolute identity of facts." *Gerber v. Computer Assocs. Int'l*, No. 91-CV-3610, 1995 U.S. Dist. LEXIS 21142, at *7-8 (E.D.N.Y. Apr. 7, 1995) (citation omitted).[6] Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in written publications circulated to the investing public, press releases, and statements provided to the investment community and the media. *See e.g., In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (disseminating statements that omitted or misrepresented material facts deemed common questions). The claims therefore arise out of the same facts and rely on the same legal principles, and are the sort that courts routinely hold to satisfy the "common question" requirement.[7]

### 3.   Typicality

Rule 23(a) also requires that Plaintiffs show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "[t]ypicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). "The commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)

---

[6] *See also In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail.").

[7] *See e.g., In re Interpublic Sec. Litig.*, 2003 U.S. Dist. LEXIS 19784, at *7-8 (S.D.N.Y. Nov. 7, 2003) ("Plaintiffs have raised a number of common issues of law and fact. Among them are whether [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements."); *Ashanti*, 2004 U.S. Dist. LEXIS 5165 at *38 (same); *In re Vivendi Universal, S.A. Sec. Litig.*, 2007 U.S. Dist. LEXIS 21115, *26, (S.D.N.Y. 2007) (same). Thus, the commonality requirement for class certification is met.

(citation omitted). In order to meet typicality, "[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'" *Gerber*, 1995 U.S. Dist. LEXIS 21142, at *8-9 (citation omitted). Thus, in securities actions:

> Because this [typicality] inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct.

*In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986). Here, Plaintiffs' claims and the claims of the putative Class Members arise from the same conduct. All members of the Class seek to prove with the same evidence that Defendants made materially false and misleading statements during the Class Period and failed to disclose material adverse facts about Intellipharmaceutics' business. Additionally, Plaintiffs are not subject to any unique defenses that could make them atypical class members. Therefore, the typicality requirement is met.

### 4.   Adequacy of Representation

Lastly, Rule 23(a) requires that Plaintiffs show that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requires a two-part showing that: (1) the class representatives have common interests with the members of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel. *See Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266, at *7 (S.D.N.Y. Oct. 13, 2015) (citation omitted).

Plaintiffs satisfy both prongs of the adequacy test. First, Plaintiffs' interests are not antagonistic to those of the Class, as all members of the Class allege claims arising from the same wrongful conduct based on the same legal theories. Moreover, the damages they seek arise from the purchase or acquisition of Intellipharmaceutics common stock at prices that were artificially

inflated as a result of Defendants' false and misleading statements, and the subsequent removal of such artificial inflation when the alleged wrongdoing was revealed. Second, Plaintiffs' counsel are highly qualified and have substantial experience in securities class actions and other complex litigation. Therefore, both aspects of the requirement of adequacy of representation are met.

## B.      The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting the prerequisites of Fed R. Civ. P. 23(a), the proposed settlement class must also satisfy one of the subdivisions of Fed. R. Civ. P. 23(b). *Amchem*, 521 U.S. at 594. Plaintiffs seek certification of a Class under of Fed. R. Civ. P. 23(b)(3), which states:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> ***
>
> (3) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

### 1.      Common Questions Predominate

The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem.*, 521 U.S. at 623. In determining whether common questions predominate, the inquiry should be directed primarily toward whether the issue of liability is common to members of the class. Indeed, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).[8]

---

[8] *See also Genden v. Merrill Lynch, et al.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) ("When determining whether common questions predominate courts 'focus on the liability issue….and if the liability issue is common to the class, common questions are held to predominate over individualized

Plaintiffs submit that there are no predominant individual issues in this case, especially in the settlement context. *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 307 (D. Mass. 1987) ("although common questions may predominate and justify a class if the case is settled, the standards of Rule 23(b)(3) may not be met if the case must be tried."). In *Amchem*, the Supreme Court noted that because a settlement class action obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Fed. R. Civ. P. 23(b)(3). 521 U.S. at 620. The Supreme Court also noted that predominance is "a test readily met in certain cases alleging consumer or securities fraud." *Id*. at 625.[9]

As discussed above with regard to commonality, the nature of this case and the elements of Plaintiffs' claims and the claims of the putative Class Members involve the same alleged misleading statements and omissions by Defendants, such that common questions predominate over individualized questions. Once common questions of liability are resolved, all that remains is the clerical task of computing the amount of damages suffered by each Class Member. Thus, common questions predominate and certification is appropriate.

## 2.   A Class Action is Superior to Numerous Individual Actions

The class action device is also the superior method for resolving the claims in this Action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number

---

questions'") (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981)).

[9] *See also In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431, 1999 U.S. Dist. LEXIS 22246, at *37 (E.D.N.Y. Apr. 30, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").

of purchasers of securities injured by securities law violations. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[m]ost of the plaintiffs would have no realistic day in court if a class action were not available"). The following factors guide the superiority determination:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate action; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Here, the utility of presenting the claims asserted through the class action method is substantial, as members of the Class who have been injured could number in the thousands, but few, if any, have been damaged to a degree that would induce them to litigate their claims on their own. The alternative would be, potentially, to unleash hundreds of individual actions into the judicial system or risk that Plaintiffs and Class Members would be unable to seek redress due to the costs of litigation. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient"). Furthermore, resolution of this Litigation as a Class Action provides benefits for Intellipharmaceutics which could not otherwise obtain a Class-wide release and, therefore, would have little incentive to enter into the current Settlement. Certification of the Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. Therefore, resolution of the Litigation as a Class Action is clearly superior to any other available method of resolution.

For the foregoing reasons, this Settlement Class meets the requirements of both Fed. R. Civ. P. 23(a) and 23(b) and the Court should Certify the Class for Settlement Purposes.

### C.  KSF Should Be Appointed Class Counsel Under Rule 23(g)

Fed. R. Civ. P. 23(g)(1)(A) states that "a court that certifies a class must appoint class

counsel." KSF satisfies the requirements of Fed. R. Civ. P. 23(g) and should be appointed as Class Counsel. As discussed above, KSF have fairly and adequately represented the Class as Lead Counsel and will continue to do so.

## VI.   THE PROPOSED NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

"Rule 23e(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" MANUAL FOR COMPLEX LITIGATION at § 21.312, at 414 (4th ed. 2004). In order to satisfy the due process requirements, notice to Class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice should also provide a "very general description of the proposed settlement." *Weinberger v. Kendrick*, 698 F. 2d 61, 70 (2d. Cir. 1982).

### A.   The Mechanics of the Proposed Notice Program

Plaintiffs propose that notice be given in the form of the attached Exhibits A-1 and A-3 to the proposed preliminary approval Order attached to the Stipulation as Exhibit A. The proposed form and method of Class notice describes in basic English terms the operation of the Settlement, the considerations that caused Class Counsel to conclude the Settlement is fair and adequate, the maximum counsel fees and class representative compensation that may be sought, the procedure for objecting to the Settlement, and the date and place of the fairness hearing.

The Claims Administrator, Rust Consulting, Inc., anticipates making an initial mailing to the Class Members whose names appear in the depository's transfer agent records and to brokers, banks, and other financial institutions that Rust Consulting, Inc. believes may hold Intellipharmaceutics common stock in street name for Class Members. Plaintiffs also propose

publishing a summary notice in the form attached to the Stipulation as Exhibit A-3 ("Summary

Notice"), which provides an abbreviated but informative description of the action and the proposed

Settlement, and also explains how to obtain the more detailed Notice of Pendency ("Notice") and

Proof of Claim forms. The Notice and Proof of Claim forms will also be posted on a website hosted

by Rust Consulting, Inc. dedicated to the settlement administration of this litigation. The Summary

Notice will be published once in *Investor's Business Daily* and once online over the *PR

Newswire*.[10] Courts have consistently approved settlements that published notice using these

publications.[11]

###### B.     The Scope of the Notice Program Is Adequate

The proposed forms of notice will fairly apprise Class members of the settlement and their

options with respect thereto and fully satisfy due process requirements. There are no "rigid rules"

that apply when determining the adequacy of notice for a class action settlement. Rather, when

measuring the adequacy of a settlement notice in a class action under either the Due Process Clause

or the Federal Rules, the court should look to the reasonableness of the notice program. *In re

Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02-CV-MDL-1484, 2007 U.S. Dist. LEXIS

9450, at *26 (S.D.N.Y. Feb. 1, 2007). Courts within the Second Circuit have established that

"[n]otice need not be perfect, but need be only the best notice practicable under the circumstances,

---

[10] *Investor's Business Daily* and *PR Newswire* are both widely circulated national business publications, as required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(A)(i). According to the publication's website, the total audience of Investor's Business Daily is approximately 457,000 readers. *See* http://www.investors.com/about-ibd/media-kit/investors-business-daily/audience. According to *PR Newswire*'s website, every release includes distribution to a network of over 5,000 websites and databases available to the investment community. *See* http://www.prnewswire.com/knowledge-center/press-release-101-tips-glossary-of-terms.html.

[11] *See e.g.*, *Lane v. Page*, 250 F.R.D. 634, 646 (D.N.M. 2007) (publication in *Investor's Business Daily* sufficient); *Thomas v. NCO Fin. Sys.*, No. 00-CV-5118, 2004 U.S. Dist. LEXIS 5405, *14 (E.D. Pa. Mar. 31, 2004) (publication notice using PR Newswire was "calculated to have ubiquitous reach.").

and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. at *27 (citing *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988)). Indeed, courts have found notice such as that proposed by Plaintiffs adequate in numerous securities class action settlements.[12]

### C. The Proposed Form of Notice Comports with the Requirements of Due Process, the PSLRA, and FRCP 23

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99-CV-0962, 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006). Specifically, with respect to cases filed under the PSLRA, notices of settlements must state: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable by plaintiffs if they prevailed at trial, a statement from each party concerning the issues on which the parties disagree"; (3) "[i]f attorney's fees or costs will be sought from the fund, a statement of who intends to apply for same and the amount that will be sought, including the amount of fees and costs on an average per share basis, as well as a brief explanation supporting the fees and costs sought"; (4) "[c]ontact information for one or more of counsel for the plaintiffs who would be available to answer questions from class members"; (5) "[a] brief explanation as to the reason for settlement"; and (6) "[o]ther information as required by the Court." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-0864, 2015 U.S. Dist. LEXIS

---

[12] *See e.g.*, *In re Global Crossing*, 225 F.R.D. at 436 (individual notice to all reasonably locatable class members, publication in newspapers and on websites); *In re Take Two Interactive Secs. Litig.*, No. 06-CV-0803, 2010 U.S. Dist. LEXIS 143837, *43-45 (S.D.N.Y. June 29, 2010).

73276, *24-25 (E.D.N.Y. Apr. 17, 2015) (citing 15 U.S.C. §78u-4(a)(7(A)-(F)).

The proposed notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-1 to the Stipulation. The information is provided in a format that is accessible to the reader and advises Class Members of their right to exclude themselves from or object to any aspect of the Settlement. Accordingly, Plaintiffs respectfully submit that the proposed form of Notice satisfies the PSLRA, Due Process, and FRCP 23, and should therefore be approved.

## VII.   PROPOSED TIMELINE OF EVENTS

In conjunction with the order preliminarily approving the Settlement, Plaintiffs respectfully request the Court set deadlines for the following events, and have proposed a schedule below:

| EVENT | PROPOSED DEADLINE |
|---|---|
| Deadline for filing of papers in support of (i) the Settlement, (ii) the Plan of Allocation, (iii) the application by Lead Counsel for attorneys' fees or reimbursement of expenses | 30 days after objection deadline |
| Deadline for Lead Counsel to file affidavit of notice mailing and publication | 30 days prior to Settlement Fairness Hearing |
| Deadline for submitting requests to be excluded from the Class | 14 days before Settlement Fairness Hearing |
| Deadline for Class Members to file objections | 60 days after initial mailing of the Notice |
| Final Approval Hearing Date | 120 days after entry of the preliminary approval order |
| Deadline for Class Members' submission of Proof of Claim and Release forms | 30 days after entry of final approval order |

## VIII.   CONCLUSION

Based on the reasons discussed above, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed settlement; (2) preliminarily certify the Class for settlement purposes; (3) approve and direct the Parties to issue Notice to the Class; and (4) set a date and time for a Final Approval Hearing.

DATED: November 11, 2019                    Respectfully submitted,

                                            **KAHN SWICK & FOTI, LLC**

                                            */s/ Kim E. Miller*
                                            Kim E. Miller
                                            250 Park Avenue, Suite 2040
                                            New York, NY 10177
                                            Telephone: (212) 696-3730
                                            Fax: (504) 455-1498
                                            kim.miller@ksfcounsel.com

                                            -and-

                                            Lewis S. Kahn
                                            Craig J. Geraci, Jr.
                                            1100 Poydras Street, Suite 3200
                                            New Orleans, LA 70163
                                            Phone: (504) 455-1400
                                            Facsimile: (504) 455-1498
                                            lewis.kahn@ksfcounsel.com
                                            craig.geraci@ksfcounsel.com

                                            *Lead Counsel for Lead Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2019, I filed the foregoing upon all counsel of record by using the CM/ECF system. The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF).

                                            */s/ Kim E. Miller*
                                            Kim E. Miller