**KAHN SWICK & FOTI, LLC**
Kim E. Miller (NY-6996)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
lewis.kahn@ksfcounsel.com
craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiffs and the
Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAWN SHANAWAZ, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>INTELLIPHARMACEUTICS INTERNATIONAL INC., ISA ODIDI and DOMENIC DELLA PENNA,<br><br>    Defendants. | Case No. 1:17-cv-05761<br><br>HON. J. PAUL OETKEN |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

# TABLE OF CONTENTS

Page:

PRELIMINARY STATEMENT ........................................................................................... 1

HISTORY AND BACKGROUND OF THE CASE .......................................................... 3

ARGUMENT ....................................................................................................................... 5

I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED BY THE COURT.......................................................... 5

   A. The Law Favors and Encourages Settlements ................................................... 5

   B. The Settlement is Procedurally Fair.................................................................... 6

   C. Application of the Second Circuit's Standards Governing Substantive Fairness Supports Approval of the Settlement .................................................................. 7

      1. The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement ........................................................... 7

      2. The Reaction of the Class to the Settlement .............................................. 9

      3. The Stage of the Proceedings and the Amount of Information Available to Counsel to Support Approval of the Settlement ...................................... 10

      4. The Risk of Establishing Liability ............................................................ 11

      5. The Considerable Risk of Establishing Damages.................................... 12

      6. The Risks of Maintaining the Class Action through Trial....................... 13

      7. The Ability of Defendants to Withstand a Greater Judgment.................. 14

      8. The Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation ............................................ 15

II. THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED .................................................. 16

III. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED.................................................................. 18

   A. The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied............................... 18

      1. Numerosity................................................................................................ 18

      2. Commonality.............................................................................................. 19

      3. Typicality ................................................................................................... 19

      4. Adequacy of Representation ..................................................................... 20

   B. The Requirements of Rule 23(b)(3) Are Satisfied........................................... 21

      1. Common Questions Predominate ............................................................. 21

      2. A Class Action is Superior to Numerous Individual Actions.................... 22

   C. KSF Should Be Appointed Class Counsel Under Rule 23(g) ........................ 23

IV. NOTICE MET THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ................ 23

i

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s):

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................. 5, 23, 24

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  955 F.3d 254 (2d Cir. 2020) ...................................................................... 15

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ..................................................................................... 12

*DeMarco v. Robertson Stephens Inc.*,
  228 F.R.D. 468 (S.D.N.Y. 2005) ............................................................... 21

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................... passim

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627 (2005) ....................................................... 19

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................... 27

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ................................................................................... 13

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ...................................................................... 25

*Gross v. GFI Grp. Inc.*,
  310 F. Supp. 3d 384 (S.D.N.Y. 2018) ....................................................... 13

*Guevoura Fund Ltd. v. Sillerman*,
  No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ....................... 5, 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ................................................................................... 14

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .................. 17

*In re Amerifirst Sec. Litig.*,
  139 F.R.D. 423 (S.D. Fla. 1991) ................................................................ 20

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. 02-cv-5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ................. 11, 12, 17

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ......................................................... 9

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) ...................................................................... 23

*In re Elec. Books Antitrust Litig.*,
  639 F.App'x 724 (2d Cir. 2016) ........................................................................... 8

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
  228 F.R.D. 541 (S.D. Tex. 2005) ........................................................................ 17

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ............................ 7

*In re Flag Telecom Holdings*,
  No. 02-cv-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) .............. 6, 8, 12, 18

*In re Giant Interactive Grp., Inc.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................ 18

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................... 8, 11, 13, 19

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  No. 10-cv-3461, 2015 U.S. Dist. LEXIS 128856 (S.D.N.Y. Sep. 24, 2015) .......................... 15

*In re Holocaust Victim Assets Litig.*,
  413 F.2d 183 (2d Cir. 2001) ............................................................................ 19

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 5, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  No. 00-cv-6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ........................... 13

*In re Luxottica Group S.p.A Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................... 5

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ................... 22, 24

*In re Omnicom Grp., Inc. Sec. Litig.*,
  No. 02-cv-4483, 2007 U.S. Dist. LEXIS 31963 (S.D.N.Y. Apr. 30, 2007) ...................... 21, 22

*In re PaineWebber Pshps. Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 10, 14, 19

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020) .......................... 18

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06-cv-5173, 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ............................. 16

*In re United Health Group Inc. PSLRA Litig.*,
  643 F. Supp. 2d 1094 (D. Minn. 2009) ................................................................. 16

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ............................................................................ 24

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................................ 15

iv

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ........................................................................... 26, 27

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ............................................................... 6, 17

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .............................................................................. 24

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) ................................................................... 22

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11-cv-7961, 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014) ........................ 7, 12

*Strougo v. Bassini*,
   258 F.Supp.2d 254 (S.D.N.Y. 2003) ......................................................... 9

*Tart v. Lions Gate Entm't Corp.*,
   No. 14-cv-8004, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) ......................... 23

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................. 27

*Wal-Mart Stores, Inc. v. Visa U.S., Inc.*,
   396 F.3d 96 (2d. Cir. 2005) ........................................................... 5, 6, 26

*Weinberger v. Kendrick*,
   698 F.2d 61 (2nd Cir. 1982), *corrected on other grounds*,
   698 F. 2d 61 (2d Cir. 1983), *cert. denied*, 464 U.S. 818 (1983) ................................ 26

**Rules**

Fed. R. Civ. P. 23(a)(1) ......................................................................... 20

Fed. R. Civ. P. 23(a)(3) ......................................................................... 22

Fed. R. Civ. P. 23(a)(4) ......................................................................... 22

Fed. R. Civ. P. 23(b)(3) ......................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... 26

Fed. R. Civ. P. 23(e) .......................................................................... 2, 5

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................... 25

**Treatises**

4 Alba Conte, Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.45 (4th Ed. 2002) ....... 11

MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004) ..................................... 26

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs David Ducharme, Sam Snyder, and Julia Ann Snyder ("Lead Plaintiffs"), by and through their counsel Kahn Swick & Foti, LLC ("Lead Counsel") respectfully submit this memorandum in support of their motion for an Order: (i) granting final approval of the proposed Settlement, which the Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice dated July 30, 2020 ("Preliminary Approval Order"); and (ii) approving the proposed plan for allocating the settlement proceeds to the Class (the "Plan of Allocation").[1]

## PRELIMINARY STATEMENT

The $1,600,000 all cash settlement (the "Settlement") is an exceptional result in which Lead Plaintiffs recovered a meaningful percentage of the maximum recoverable damages for the Class (a maximum of $12.5 million, as determined by Lead Plaintiffs' economics consultant) and avoided the serious risks of continued litigation. The settlement of this complex litigation is the result of rigorous negotiations involving in-depth discussions and analysis of the strengths and weaknesses of each side's allegations and defenses, facilitated by a qualified mediator, Michelle Yoshida of Phillips ADR. But for the vigorous efforts of Lead Counsel, the Class may have recovered nothing.[2]

The terms and conditions of the Settlement are set forth in the Stipulation of Settlement filed November 11, 2019 (the "Stipulation"). The Settlement resolves this action in its entirety for $1,600,000 in cash in exchange for a release of all claims asserted in the Consolidated Amended

---

[1] The Class, as preliminarily certified by the Court for the purposes of Settlement, is comprised of all persons (including their beneficiaries) who purchased or otherwise acquired common stock of Intellipharmaceutics International, Inc. ("IPCI" or the "Company") between May 21, 2015 and July 27, 2017, inclusive (the "Class Period"). *See* Preliminary Approval Order, Dkt. No. 62 at ¶ 2.

[2] *See generally* the accompanying Declaration of Kim E. Miller in Support of Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Lead Plaintiffs' Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Award to Lead Plaintiffs and Proposed Class Representative (the "Miller Decl.").

Class Action Complaint (the "Complaint") against Defendants IPCI, Dr. Isa Odidi ("Odidi"), and Domenic Della Penna ("Della Penna")[3] (collectively, "Defendants") and dismissal of the Action. Lead Counsel submits the Settlement is, pursuant to Fed. R. Civ. P. 23(e), fair, reasonable, and adequate under the circumstances; that the Plan of Allocation is fair and equitable; and that the Class meets all of the requirements under Fed. R. Civ. P. 23 for certification as a settlement class.[4]

Lead Counsel respectfully submits that this Settlement is appropriate given the obstacles to a greater recovery. As with any complex class action litigation of this type, Lead Plaintiffs faced various significant hurdles in certifying the Class and proving both liability and damages. The case was stayed at the Parties' request in order to proceed with a mediation shortly after Lead Plaintiffs filed their motion for class certification. Had the Parties not reached a proposed Settlement, Defendants would have rigorously argued against Lead Plaintiffs' motion, including challenging market efficient, adequacy and typicality of proposed class representatives, and potentially price impact. Regardless of Lead Counsel's confidence in their arguments, a favorable ruling on class certification was far from certain. When taking into consideration these risks, in addition to the risk that Defendants could prevail at summary judgment or trial, Lead Counsel recommended Lead Plaintiffs enter the Settlement with Defendants, assuring a meaningful recovery on the Class claims.

The recommendation of the Settlement for approval by experienced counsel familiar with

---

[3] Defendants Odidi and Della Penna are hereinafter collectively referred to as the "Individual Defendants."

[4] Despite Defendants' tenuous cash position, Lead Counsel was nevertheless able to negotiate, and the Parties entered into, a "Contribution Agreement," such that the Settlement Fund will be augmented by an additional, possible contribution of certain Canadian tax reimbursements up to $400,000 in the event IPCI receives those reimbursements within 547 days after the date of entry of the final judgment. *See* Contribution Agreement, Dkt. No. 58-6. Plaintiffs respectfully submit that the Settlement of $1,600,000 is fair, reasonable, and adequate, without regard to the possible additional contribution amount.

the strengths and weaknesses of their clients' claims, and who negotiated the Settlement at arm's-length and with the assistance of an experienced mediator, strongly supports approval of the Settlement. Furthermore, members of the Class appear to overwhelmingly agree with Lead Counsel's conclusion. Pursuant to the Court's preliminary approval order, 12,528 packages containing the Notice of Proposed Settlement of Class Action (the "Notice") and Proof of Claim forms have been mailed to potential Class Members and nominees. *See* Supplemental Declaration of Jason Rabe ("Suppl. Rabe Decl."), attached as Exhibit D to Miller Decl., at ¶ 3. Additionally, the Summary Notice was published in the *Investor's Business Daily* and online over the *PR Newswire* on August 17, 2020. *See* Initial Rabe Decl., Dkt. No. 63-1, at ¶ 6. The Notice apprised Class Members of the terms of the Settlement and Plan of Allocation, their right to exclude themselves from the Class or object to the Settlement or Plan of Allocation, and the procedure for doing so. *Id.* The deadline for Class Members to object to the settlement was October 16, 2020, but not a single objection from the Class was received. *See* Suppl. Rabe Decl. at ¶ 7. Additionally, the deadline for Class Members to exclude themselves from the Settlement will expire on November 30, 2020. To date, there have been no valid requests for exclusion from Class Members. *Id.* at ¶ 6. While the deadline for Class Members to submit Proof of Claim forms is not until January 5, 2021, Rust Consulting ("Rust") has already received 147 submissions. *Id.* at ¶ 8. This represents an overwhelming endorsement of the Settlement by the Class which should weigh heavily in favor of the Court's approval the Settlement. For the reasons discussed herein, the Court should approve the Settlement and Plan of Allocation.

## HISTORY AND BACKGROUND OF THE CASE

The Court is respectfully referred to the accompanying Declaration of Kim E. Miller for a more detailed history of the litigation and the factors bearing on the reasonableness of the Settlement, Plan of Allocation, and fee request. In short, Plaintiffs' Complaint alleges violations

of Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. Lead Plaintiffs alleged that, throughout the period from May 21, 2015 through July 26, 2017 (the "Class Period"), Defendants made misleading statements and omitted essential information regarding the development of and FDA approval for their opioid abuse deterrence drug, Rexista. Specifically, the Complaint alleges that ICPI made misleading statements regarding: (1) Rexista's oral and nasal abuse-deterrent properties; (2) Rexista's bioequivalence to OxyContin; and (3) the contents of the Rexista NDA and discussions with the FDA regarding acceptance of the NDA. This conduct artificially inflated the price of IPCI securities and caused Lead Plaintiffs and the other members of the Class significant losses when the truth was revealed and the price of IPCI's common stock fell sharply. *See* Miller Decl. at ¶ 8

On March 30, 2018, Defendants moved to dismiss the Complaint, claiming: (i) Plaintiffs did not allege any actionable misstatements or omissions; and (ii) Plaintiffs did not allege particularized facts giving rise to a strong inference of scienter. *See* Defs.' Mot. Dismiss, Dkt. No. 29. On December 17, 2018, the Court denied Defendants' motion to dismiss in part. *See* Opinion & Order Den. Defs.' Mot. Dismiss, Dkt. No. 35. In a well-reasoned opinion, the Court granted Defendants' motion to dismiss with respect to Plaintiffs' Section 10(b) and 20(a) claims only to the extent they were based on Defendants' statements describing Rexista's abuse-deterrent features and its bioequivalence to OxyContin, but denied the motion with respect to Plaintiffs' Section 10(b) and 20(a) claims based on Defendants' statements describing the contents of the Rexista NDA as filed with the FDA. *See* Miller Decl. at ¶ 23.

# ARGUMENT

## I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED BY THE COURT

### A. The Law Favors and Encourages Settlements

Fed. R. Civ. P. 23(e) provides that class actions may not be dismissed without approval of the Court. Judicial approval of class action settlements is intended to ensure that rights of absent class members are protected. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997). A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S., Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005) (internal quotations omitted). While the decision to grant or deny approval lies within the discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Id.*; *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("[W]e emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116, at *14 (S.D.N.Y. Dec. 18, 2019) ("[A] court should be mindful of the strong judicial policy in favor of settlements.") (internal quotations omitted). Further, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Recognizing that a settlement represents an exercise of judgment between the negotiating parties, the Second Circuit has acknowledged that, while a court should not simply "rubber stamp" a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). Because the object of settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. *See*

*Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972). Here, both the negotiating process leading to the Settlement and the Settlement's substantive terms support final approval.

**B.      The Settlement is Procedurally Fair**

A strong presumption of fairness attaches to a proposed settlement if it is reached, as here, following arm's-length negotiations by experienced counsel who are most closely acquainted with the facts and law of the underlying litigation. *See, e.g.*, *Wal-Mart*, 396 F.3d at 116; *In re Flag Telecom Holdings*, No. 02-cv-3400, 2010 U.S. Dist. LEXIS 119702, at *40 (S.D.N.Y. Nov. 5, 2010) (participation of experienced mediator in settlement negotiations reinforces that settlement agreement is non-collusive); *Sillerman*, 2019 U.S. Dist. Lexis 218116, at *16 ("A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation."). Here, this presumption of fairness and adequacy applies because the Settlement is the result of extensive, arm's-length negotiations conducted by experienced counsel for all Parties with the assistance of a qualified and neutral mediator. *See* Miller Decl. at ¶ 6.

The conclusion of Lead Counsel that the Settlement is fair and reasonable and in the best interests of the Class also supports its approval. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement."). Lead Counsel, who have substantial experience in securities class actions, have carefully analyzed the strengths and weaknesses of the Class's claims and the circumstances of the Parties and have concluded that the proposed Settlement is in the best interests of the Class. *See* Miller Decl. at ¶ 70; KSF Firm Resumé, attached as Exhibit E to the Miller Decl. That judgment is entitled to "great weight." *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-7961, 2014 U.S. Dist. LEXIS 37872, at *6 (S.D.N.Y. Mar. 21, 2014). These considerations

confirmed the reasonableness of the Settlement and leave little doubt that this Settlement is entitled

to the presumption of procedural fairness under Second Circuit law.

#### C.    Application of the Second Circuit's Standards Governing Substantive Fairness Supports Approval of the Settlement

The Settlement is also substantively fair, reasonable, and adequate under the well-

established law governing approval of class action settlements in this Circuit. In *City of Detroit v.*

*Grinnell Corp.*, the Second Circuit identified nine factors that courts should consider in evaluating

a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through trial; (7)
> the ability of defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light
> of all attendant risks of litigation.

495 F.2d at 463 (citations omitted). *See also In re Elec. Books Antitrust Litig.*, 639 F.App'x 724,

726 (2d Cir. 2016) ("In this Circuit, district courts examine the fairness, reasonableness, and

adequacy of a class settlement according to the *Grinnell* Factors"). All nine factors need not be

satisfied, "rather the court should consider the totality of these factors in light of the particular

circumstances." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)

(citation omitted). As demonstrated below, the Settlement satisfies the criteria for approval set

forth in *Grinnell*. Indeed, this Settlement represents an excellent recovery for the Class, and, in the

judgment of Lead Counsel, there is serious doubt as to whether a more favorable result was

possible. Accordingly, the Settlement warrants this Court's final approval.

#### 1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

Courts have consistently recognized the complexity, expense, and likely duration of

litigation as critical factors in evaluating the reasonableness of a settlement, especially in securities

class action cases. *See, e.g.*, *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *43 ("[I]n evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.") (internal quotations omitted). If approval of the Settlement were denied, a substantial amount of work would need to be done immediately, including completing the briefing of Lead Plaintiffs' Motion for Class Certification (Dkt. No. 47), production and analysis of documents, depositions, interrogatories, and third-party discovery. This would likely be followed by expert discovery, motions for summary judgment, designation of witnesses and exhibits, presentation of witnesses and evidence at trial, and, depending on the trial court's ruling on the merits, briefing of the losing party's near-certain appeal. If this case proceeds to trial, it will involve complex issues for jurors—particularly with regard to the drug approval process, loss causation and damages.

  The Settlement not only spares the litigants the delay and enormous expense of continued litigation, but also saves the time and resources of the Court. The Settlement obviates the need for the Court to rule on class certification and various discovery and dispositive motions that would likely arise if the Action continued. Even if the Class could recover a larger judgment after a trial, and assuming Defendants could even financially withstand a greater judgment, the additional delay through post-trial motions and the appellate process could deny the Class any recovery for years, further reducing its value. The Settlement, if approved, ensures and advances the recovery to the Class, possibly by as much as three years or more. *See Strougo v. Bassini*, 258 F.Supp.2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time and value of money, make future recoveries less valuable than this current recovery."). At this juncture, the $1,600,000 Settlement results in an immediate

and substantial tangible recovery without the considerable risk, expense, and delay of continued litigation, trial, and probable appeals. Thus, this factor speaks strongly in favor of the preliminary approval of the proposed Settlement.

2. The Reaction of the Class to the Settlement

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012). Indeed, the "the absence of objectors may itself be taken as evidencing the fairness of a settlement." *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

In accordance with the Preliminary Approval Order, on August 13, 2020, Rust mailed the Notice and Claim Form to Class Members and published the Summary Notice in the *Investor's Business Daily* and over the *PR Newswire* on August 17, 2020. *See* Dkt. No. 63-1 at ¶ 6. The long-form Notice and the Summary Notice include a summary of the terms of the Settlement, Lead Counsel's reasons for recommending the Settlement, the date of the Settlement Hearing, information on how to obtain more information on the case and the Settlement, and an explanation of Class Members' rights to object or exclude themselves. *See* Miller Decl. at ¶ 40. Class Members were directed to the case website, www.intellipharmaceuticssecuritieslitigation.com, for more information. *Id.* at ¶ 43. While neither the November 30, 2020 deadline set by the Court for Class Members to opt-out of the Settlement, nor the January 5. 2021 deadline for Class Members to submit proof of claim forms has passed, to-date, the Claims Administrator has received 147 submitted Claim Forms, no valid opt-out requests, and no objections. *See* Suppl. Rabe Decl. at ¶¶ 6-8. At this juncture, Lead Counsel respectfully submits that the reaction to the Settlement is overwhelmingly positive and therefore supports final approval.

3.    The Stage of the Proceedings and the Amount of Information
Available to Counsel to Support Approval of the Settlement

The third *Grinnell* factor examines the amount of information available about the claims

and defenses and the positions of the parties to ensure that plaintiffs and their counsel were able to

properly evaluate the merits of the case and assess the adequacy of the settlement. *See In re AOL*

*Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-cv-5575, 2006 U.S. Dist. LEXIS 17588, at *37

(S.D.N.Y. Apr. 6, 2006) ("The relevant inquiry for this factor is whether the plaintiffs have

obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their

claims and the adequacy of the settlement."). "There is no precise formula for what constitutes

sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is

clear that the court need not possess evidence to decide the merits of the issue, because the

compromise is proposed in order to avoid further litigation." 4 Alba Conte, Herbert B. Newberg,

NEWBERG ON CLASS ACTIONS § 11.45, at 127, 128 (4th Ed. 2002). Courts have held that "[f]ormal

discovery is not a prerequisite; the question is whether the parties had adequate information about

their claims." *Global Crossing*, 225 F.R.D. at 458.

The volume and substance of Lead Counsel's knowledge of the merits and potential

weaknesses of the Class's claims are unquestionably adequate to support the Settlement. This

knowledge is based on Lead Counsel's extensive investigation of the facts and thorough research

of the underlying law. As detailed in the Miller Declaration, these efforts included: review of all

publicly available information about IPCI and the conduct alleged in the Complaint, interviews

with well-placed individuals with knowledge regarding IPCI's practices; and expert consultation

on the issues of damages and market efficiency. *See* Miller Decl. at ¶ 27. Moreover, Defendant

IPCI produced approximately 3,800 pages of documents which Lead Counsel reviewed, analyzed,

and determined were confirmatory of the fairness, reasonableness, and adequacy of the Settlement.

10

The accumulation of the information discovered through the aforementioned sources and processes permitted Lead Counsel to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. Having sufficient information to evaluate the strengths and weaknesses of the Settlement, Lead Counsel were equipped to intelligently negotiate the terms of the Settlement before the Court. Therefore, this Court should find that this factor also supports final approval of the Settlement.

4.    The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. The Court is not required to "decide the merits of the case or resolved unsettled legal questions," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), or to "foresee with absolute certainty the outcome of the case." *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *33. "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id*. While Lead Counsel believes that Plaintiffs' claims could survive Defendants' opposition to class certification and summary judgment motion, ultimate success is never assured, and the substantial recovery provided by this Settlement, when viewed in light of the risks of proving liability and actually collecting any judgment, is undoubtedly fair, adequate, and reasonable. *See, e.g.*, *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Flag Telecom,* 2010 U.S. Dist. LEXIS 119702, at *48 ("Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (collecting cases).

Plaintiffs face numerous hurdles in this Action. Because this Action involves claims for relief under the Securities and Exchange Act of 1934 (the "Exchange Act"), Plaintiffs must demonstrate that Defendants made misstatements or omissions of material fact with scienter in

connection with the sale or purchase of securities. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Defendants have contested whether their statements constituted material misrepresentations or omissions and argued that the Amended Complaint does not allege sufficient particularized facts to give rise to the requisite strong inference that the Defendants acted with scienter. *See* Defs.' Mem. Supp. Mot. Dismiss, Dkt. No. 31 at 2-4. While the Court rejected Defendants' scienter arguments at the Motion to Dismiss stage, *see* Dkt. No. 35 at 10, this does not guarantee Plaintiffs' arguments will also be successful at the summary judgment stage of the litigation. Proving Defendants acted with the requisite scienter is often especially difficult in securities actions. *See, e.g.*, *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-cv-6689, 2003 U.S. Dist. LEXIS 17090, at *11 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving scienter); *Gross v. GFI Grp. Inc.*, 310 F. Supp. 3d 384, 395 (S.D.N.Y. 2018) (granting defendants' motion for summary judgment on the issue of scienter). While Plaintiffs believe they can ultimately triumph on these issues, Defendants will likely continue to argue the opposite every step of the way. These risks, when balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is reasonable.

### 5.   The Considerable Risk of Establishing Damages

Even if Lead Plaintiffs successfully establish liability, they still face substantial risk in proving the existence and amount of damages. *See Global Crossing*, 225 F.R.D. at 459 ("Calculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and the stock's 'true' value absent the alleged fraud.") (internal citations omitted). Lead Plaintiffs must prove that Defendants' alleged false and misleading statements artificially inflated the price of IPCI securities or maintained artificial inflation in the price of IPCI securities throughout the Class Period. Lead Counsel, with the assistance of their damages expert, preliminarily calculated the damages that are

attributable to Defendants' alleged wrongdoing at $12.5 million. However, this figure assumes that every element of the Class's damages theory survives class certification and is accepted by the jury as being correct and recoverable. At this pre-Class Certification stage of the litigation, this can hardly be guaranteed.

Further, the presentation of damages in securities litigation is a complex matter that would require the presentation of costly expert testimony. As a result, Plaintiffs and the putative Class will ultimately face a "battle of the experts" in which no party is ever guaranteed success. It is possible a jury might find that Defendants' expert on damages is more persuasive. *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome with regard to competing damages experts). Because of the difficulties in proving damages, this factor weighs in favor of final approval of the Settlement.

6.   The Risks of Maintaining the Class Action through Trial

If the litigation had not settled, the Court would need to rule on Plaintiffs' motion for class certification. In order to meet the predominance requirement of Federal Rule 23(b)(3), Lead Plaintiffs must show that IPCI securities were traded in an efficient market. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283 (2014) ("*Halliburton II*"). Notably, Plaintiffs submitted the expert report of Chad Coffman, CFA on market efficiency in connection with their motion for class certification. If briefing on Plaintiffs' motion were to resume, Defendants would likely advance arguments against market efficiency and submit an expert report challenging both market efficiency and, potentially, price impact. Plaintiffs also anticipate Defendants would challenge the adequacy and typicality of Lead Plaintiffs and the proposed Class Representatives. While Lead Counsel believes their arguments would have prevailed, class certification would have been far from certain. And, even if Plaintiffs prevailed, Defendants may have petitioned the Second Circuit for permission to appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure,

which could have resulted in substantial delays in the resolution of the litigation.

The recent case of *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc. ("Goldman II")*, 955 F.3d 254 (2d Cir. 2020), is instructive on this point. There, the district court originally granted plaintiffs' motion for class certification on September 24, 2015. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-3461, 2015 U.S. Dist. LEXIS 128856, at *25 (S.D.N.Y. Sep. 24, 2015). Defendants challenged the district court's order by appealing to the Second Circuit on a Rule 23(f) petition not once, but *twice*. On April 7, 2020, some four and a half years after the district court originally granted plaintiffs' motion for class certification, the Second Circuit entered its order denying defendants' petition and sustaining the district court's order certifying the class. *See Goldman II*, 955 F.3d at 258. On August 21, 2020, defendants filed a petition for certiorari, which petition is still pending with the Supreme Court. The danger of a protracted delay at the class certification stage is very real.

7.      The Ability of Defendants to Withstand a Greater Judgment

The court may also consider Defendants' ability to withstand a greater judgment than the amount offered in the Settlement. *Grinnell*, 495 F.2d at 463. The fact that Defendants have the capacity to pay more money, however, does not render the Settlement unreasonable. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Here, the Settlement of $1,600,000 is a substantial amount and represents a significant percentage – 12.8% -- of the maximum damages of $12.5 million Plaintiffs' economic consultants calculated. Moreover, were the litigation to move forward, Defendants would potentially quickly exhaust their insurance coverage, leaving none of it to fund a settlement. Nevertheless, even if IPCI could possibly pay more, "'this fact, standing alone does not render the settlement inadequate.'" *In re United Health Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1099 (D. Minn. 2009) (citation omitted); *see also In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173, 2008 U.S. Dist.

LEXIS 36093, at *23 (S.D.N.Y. May 1, 2008) ("[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate."). The Parties agreed that it is both prudent and economically sound to settle at this stage and not expend additional time, money, and other resources on this litigation. By settling the case now, IPCI is able to put the litigation behind it and move forward, while Plaintiffs are able to recover a large percentage of class-wide damages without risking years of litigation and the potential for no ultimate recovery.[5]

        8.      <u>The Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation</u>

The last two substantive *Grinnell* factors are the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of the litigation. *See Grinnell*, 495 F.2d at 462. In considering the adequacy of the settlement, the amount should be judged "not in comparison with the possible in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness," a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693. Additionally, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment years down the road. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where settlement fund in escrow earning interest "the benefit of the Settlement will….be

---

[5] As recounted in IPCI's unaudited financial results for the third quarter of 2020, filed with the SEC on Form 6-K on October 15, 2020, the Company had only $798,556 of cash on-hand as of August 31, 2020. IPCI's 3Q:20 Form 6-K notes that "[t]he Company had cash of $798,556 as at August 31, 2020 compared to $54,359 as at August 31, 2019. The increase in cash was mainly due to the receipt of certain payments under the Purdue stipulated dismissal as well as lower expenditures for R&D and selling, general, and administrative expenses."

realized far earlier than a hypothetical post-trial recovery"). Considering the present and time value of money and the risk that the Class would not succeed in proving liability or in establishing loss causation or damages in excess of the Settlement amount, this Settlement is well within the range of reasonableness. *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

Here, Plaintiffs face numerous legal and procedural hurdles that, if not met, could result in a zero recovery for Plaintiffs and the Class. In light of these challenges, the $1,600,000 Settlement is a fair, reasonable, and adequate recovery for the Class. Accordingly, the *Grinnell* factors support final approval of the Settlement.

## II.   THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998, *40 (S.D.N.Y. July 21, 2020). "A Plan of Allocation is fair and reasonable as long as it has a 'reasonable, rational basis.'" *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *61 (citation omitted). In determining whether a plan of allocation is reasonable and has a rational basis, courts give great weight to the opinion of experienced counsel. *See In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.") (internal citations omitted).

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel in consultation with their retained damages experts, ensuring its fairness and reliability. *See* Miller Decl. at ¶¶ 48-49. The Plan of Allocation provides for distribution of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved

costs, fees, and expenses) to Class Members who have a recognized loss on their transactions in IPCI securities purchased or otherwise acquired during the Class Period. *Id.* at ¶ 50. Under the proposed Plan of Allocation, each Authorized Claimant (as defined in paragraph 1.13 of the Stipulation) will receive a pro rata share of the Net Settlement Fund, with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants. *Id.* at ¶ 54.

The formula to apportion the Net Settlement Fund among Authorized Claimants is based on their purchase price of IPCI securities and whether and when they sold IPCI Securities in relation to the Company's alleged corrective disclosures. Shares eligible for recognizable losses are those shares of IPCI' common stock purchased or otherwise acquired from May 21, 2015 (inclusive) to July 27, 2017 (prior to the opening of the market). For shares sold before the market opened on July 24, 2017, the recognized Loss Amount for each share shall be zero, as shares purchased during the Class Period but sold prior to the first corrective disclosure did not sustain recoverable losses under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005). Thereafter, losses are calculated using a formula based on the decline in the price. This plan is fair and reasonable. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462. Indeed, interclass allocations may be appropriately based upon, among other things, the relative strengths and weakness of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.2d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *See PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believes that the Plan of Allocation is fair and reasonable, and respectfully submits that it should be approved by the Court.

**III.    THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED**

Lead Counsel submits that the Court should grant final certification to the Class for settlement purposes only. In its Preliminary Approval Order, the Court conditionally certified the Class for purposes of settlement. *See* Dkt. No. 62 at ¶¶ 2-3. The Court found the following:

> The Court has determined preliminarily that: (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims or defenses of Plaintiffs are typical of the Class; and (d) Plaintiff will fairly and adequately protect the interests of the Class. The Court further preliminarily finds that the questions of law or fact common to Class Members predominate over any questions affecting individual members, including but not limited Intellipharmaceutics published materially false and/or misleading statements between May 21, 2015 and July 27, 2017, as alleged by Plaintiffs. The Court also preliminarily finds that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

*Id*. at ¶ 3. Because all of the requirements for class certification have been met (*see* Fed. R. Civ. P. 23(a) and (b)(3)), and in light of the substantial benefits the Settlement confers on the Class, Lead Counsel respectfully requests that the Court now grant final class certification for the purposes of Settlement.

**A.    The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied**

1.    <u>Numerosity</u>

The first requirement of Rule 23(a) is that plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Notably, "the numerosity requirement of Rule 23(a)(1) is generally assumed to be met in class action suits, such as the one here, involving nationally traded securities." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991). Here, there are thousands of geographically dispersed Class Members. Throughout the Class Period IPCI was listed on NASDAQ, where it traded, on average, 133.2 thousand shares weekly with approximately 3 million shares outstanding. *See* Market Efficiency Report of Chad Coffman, CFA, Dkt. No. 49-4, at ¶ 25. Joinder of such a great number of persons would be

exceedingly difficult and impracticable. *See DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 479 (S.D.N.Y. 2005). Therefore, the numerosity requirement is met.

        2.   <u>Commonality</u>

Secondly, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Proof of Plaintiffs' claims is necessarily common to all members of the Class. Indeed, in determining whether common questions exist, Rule 23(a)(2) "requires only that there be 'a common nucleus of operative fact,' not that there be an absolute identity of facts." *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02-cv-4483, 2007 U.S. Dist. LEXIS 31963, at *11 (S.D.N.Y. Apr. 30, 2007).

Here, the following legal and factual issues are common to the Class: (a) whether Defendants violated the federal securities laws; (b) whether documents, releases, and statements disseminated to the investing public omitted and/or misrepresented material facts regarding, among other things, IPCI's New Drug Application ("NDA") for Rexista, an abuse-deterrent extended release formulation of oxycodone hydrochloride; (c) whether Defendants acted with scienter in omitting and/or misrepresenting material facts; and (d) whether the market price of IPCI securities was artificially inflated due to Defendants' conduct, and if so, whether members of the Class sustained damages when the truth regarding Defendants' conduct was revealed and the artificial inflation was removed from the price of the securities. Where, as here, "plaintiffs allege that the class members have been injured by the same fraudulent scheme, the commonality requirement is satisfied." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953, at *30 (S.D.N.Y. Dec. 23, 2009).

        3.   <u>Typicality</u>

Rule 23(a) also requires that Plaintiffs show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

The "[t]ypicality requirement is satisfied when each class member's claim arises from the same courts of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). Typicality does not require "the factual background of each named plaintiff's claim be identical" as long as "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiff's claim as to that of other members in the proposed class." *Omnicom*, 2007 U.S. Dist. LEXIS 31963, at *12 (citations omitted). Here, Plaintiffs' claims and the claims of Class Members arise from the same conduct. All members of the Class seek to prove that Defendants made materially false and misleading statements during the Class Period and failed to disclose material adverse facts about the FDA approval process for IPCI's new drug, Rexista. *See* Miller Decl. at ¶ 25. The evidence required to prove Plaintiffs' claims would establish the same violation by Defendants for every member of the putative Class. Therefore, the typicality requirement is met.

4.   Adequacy of Representation

Rule 23(a) requires that Plaintiffs show that the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). This requires a two-part showing that: (1) the class representatives have common interests with the members of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel. *See Tart v. Lions Gate Entm't Corp.*, No. 14-cv-8004, 2015 U.S. Dist. LEXIS 139266, at *7 (S.D.N.Y. Oct. 13, 2015) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Plaintiffs satisfy both prongs of the adequacy test. First, Plaintiffs' interests are not antagonistic to those of the Class, as all members of the Class allege claims arising from the same wrongful conduct based on the same legal theories. Moreover, the damages arise from the purchase or acquisition of IPCI securities at prices that were artificially inflated as a result

20

of Defendants' false and misleading statements and the subsequent removal of such artificial

inflation when the alleged wrongdoing was revealed. Second, Lead Counsel is highly qualified

and has substantial experience in securities class actions and other complex litigation. Therefore,

both aspects of the requirement of adequacy are met.

### B.      The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting the prerequisites of Fed R. Civ. P. 23(a), the proposed class must

also satisfy one of the subdivisions of Fed. R. Civ. P. 23(b). *See Amchem*, 521 U.S. at 594. Lead

Plaintiffs seek certification of a Settlement Class under of Fed. R. Civ. P. 23(b)(3), which states:

> (b) Class Actions Maintainable. An action may be maintained as a class action if
> the prerequisites of subdivision (a) are satisfied, and in addition:
>
> ***
>
> (3) the court finds that the questions of law and fact common to the
> members of the class predominate over any questions of law or fact
> common to the members of the class predominate over any questions
> affecting only individual members, and that a class action is superior
> to the other available methods for the fair and efficient adjudication of
> the controversy.

#### 1.      Common Questions Predominate

To certify a class under Rule 23(b)(3), a court must find that the common issues of fact and

law predominate over individual issues. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280

F.3d 124, 132-33 (2d Cir. 2001). The predominance requirement may be satisfied "when liability

can be determined on a class-wide basis." *Id.* at 139. The Supreme Court has stated that

"[p]redominance is a test readily met in certain cases alleging consumer or securities fraud."

*Amchem*, 521 U.S. at 625. Plaintiffs in this case allege Defendants engaged in a common course

of fraudulent conduct to artificially inflate the price of IPCI's stock. *See* Miller Decl. at ¶ 17. Proof

of that common course of conduct will establish Defendants' liability as to all Class Members. *See*

*Marsh*, 2009 U.S. Dist. LEXIS 120953, at *35 (each element of establishing liability for securities

fraud "is susceptible of generalized proof and, accordingly, the predominance requirement of Rule

23(b)(3) is satisfied."). Because liability can be determined on a class-wide basis, and issues common to the Class predominate, the predominance requirement of Rule 23(b)(3) is satisfied.

2.    A Class Action is Superior to Numerous Individual Actions

The class action device is the superior method for resolving the claims in this Action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method, to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by securities law violations. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Most of the plaintiffs would have no realistic day in court if a class action were not available."). Here, the utility of presenting the claims asserted through the class action method is substantial, as members of the Class who have been injured number in the thousands, but few have been damaged to a degree where it would be cost-effective for them to litigate their claims on their own. The alternative would be, potentially, to unleash hundreds of individual actions into the judicial system or risk that Plaintiffs and Class Members would be unable to seek redress due to the prohibitive costs of litigation. *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ("[T]he alternatives [to class action] are either no recourse for thousands of stockholders to whom the courthouse would thus be out of bounds or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake."). Furthermore, resolution of this litigation as a class action will be beneficial for Defendants, who could not otherwise obtain a Class-wide release and, therefore, would have little incentive to enter into the current Settlement. Certification of the Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. Therefore, resolution of the litigation through the Settlement is clearly superior to any other available method of resolution.

For all the foregoing reasons, this Court should certify the Class for Settlement Purposes.

### C.      KSF Should Be Appointed Class Counsel Under Rule 23(g)

Fed. R. Civ. P. 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." KSF satisfies the requirements of Fed. R. Civ. P. 23(g) and should be appointed as Class Counsel. Indeed, the Court made a preliminary determination of KSF's adequacy in approving KSF as Lead Counsel. Since that time, KSF have fairly and adequately represented the Class and will continue to do so.

## IV.      NOTICE MET THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Fed. R. Civ. P. 23 requires notice of a proposed class action settlement be provided to the Class through "the best notice practicable under the circumstances, including individual notice to all members of the class who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See also* Fed. R. Civ. P. 23(e)(1). While "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or [Federal] Rules 23(e) requirements, the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2nd Cir. 1982), *corrected on other grounds*, 698 F. 2d 61, 65 (2d Cir. 1983), *cert. denied*, 464 U.S. 818 (1983). The adequacy of a settlement notice in a class action under federal law is measured by reasonableness. *See, e.g.*, *Wal-Mart*, 396 F.3d at 113. "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" MANUAL FOR COMPLEX LITIGATION § 21.312, at 414 (4th ed. 2004). To satisfy the due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice

should also provide a "very general description of the proposed settlement." *Weinberger*, 698 F. 2d at 70.

In accordance with the Preliminary Approval Order, Rust mailed copies of the Notice (in the form approved by the Court) to Class Members whose names appeared in the depository's transfer agent records and to brokers, banks, and other financial institutions that Rust believed held IPCI securities for Class Members. In total, Rust mailed 12,528 copies of the Notice to potential Class Members via first class mail. *See* Suppl. Rabe Decl. at ¶ 3. In addition, summary publication notice in the form approved by the Court was published in the *Investor's Business Daily* and over the *PR Newswire* on August 17, 2020. Dkt. No. 63-1, at ¶ 6.

Due process is generally satisfied by sending a copy of the notice via first class mail to each class member whose address can be located with reasonable effort along with a publication notice. *See, e.g.*, *Mullane*, 339 U.S. 314; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-177 (1974). The Notice mailed to Class members provided a detailed background and history of the Action, fully apprised Class members of the terms of the Settlement, and included a discussion of options available to them in connection with the proceedings, including their right to personally appear and/or object to any aspect of the relief requested or to request exclusion from the Class and the procedures for doing so. Thus, the Notice presents a fair recital of the subject matter and proposed terms of the Settlement. The timing of the Notice was sound. Class members had 64 days following the initial mailing of the Notice to determine whether they would object to any aspect of the Settlement or the Plan of Allocation, and 109 days to request exclusion from the Class. This period was more than sufficient. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (31 days between mailing and deadline for written objection held sufficient). Accordingly, the Notice sent to Class members provided in this case complies with the Court's

directives in the Preliminary Approval Order, and the Notice satisfies the requirements of due process and Fed. R. Civ. P. 23(c) and (e).

## **<u>CONCLUSION</u>**

For the foregoing reasons, the $1,600,000 all-cash Settlement and proposed Plan of Allocation of the Settlement proceeds are fair, reasonable, and adequate and should be approved.

DATED: November 20, 2020        Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ Kim E. Miller*
Kim E. Miller (NY-6996)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
lewis.kahn@ksfcounsel.com
craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020, I filed the foregoing upon all counsel of record by using the CM/ECF system. The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF).

*/s/ Kim E. Miller*
Kim E. Miller