**KAHN SWICK & FOTI, LLC**
Kim E. Miller (NY-6996)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
lewis.kahn@ksfcounsel.com
craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAWN SHANAWAZ, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:17-cv-05761 |
| Plaintiff, | HON. J. PAUL OETKEN |
| vs. | |
| INTELLIPHARMACEUTICS INTERNATIONAL INC., ISA ODIDI and DOMENIC DELLA PENNA, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION
EXPENSES AND AWARD TO LEAD PLAINTIFFS
AND PROPOSED CLASS REPRESENTATIVE**

## <u>TABLE OF CONTENTS</u>

**Page:**

PRELIMINARY STATEMENT ......................................................................................... 1

HISTORY AND BACKGROUND OF THE CASE ...................................................... 4

ARGUMENT ................................................................................................................... 4

    I.  LEGAL STANDARDS ...................................................................................... 4

        A.  Award of Attorneys' Fees under the PSLRA ............................................... 4

            1.  The PSLRA's Framework for the Selection of Lead Plaintiff and
                Lead Counsel .................................................................................... 4

            2.  The Second Circuit and the PSLRA Support the Percentage of Recovery
                Approach for Awarding Fees in Common Fund Cases ......................... 5

        B.  The Requested Fee Percentage Is Reasonable Under the Percentage Method,
           a Lodestar Cross-Check, and the *Goldberg* Factors ................................... 6

            1.  The Fee is Justified by the Time and Labor Expended by Counsel...................... 6

            2.  The Fee is Supported by the Magnitude and Complexity of the Litigation........... 9

            3.  The Risk of Litigation Supports the Requested Fee ............................................. 11

            4.  The Quality of Representation Supports the Requested Fee ............................... 14

            5.  The Requested Fee is Reasonable in Relation to the Settlement ........................ 15

            6.  Public Policy Considerations Support the Requested Fee ................................... 17

        C.  The Class's Reaction to the Fee Request................................................... 18

        D.  Lead Counsel's Request for Reimbursement of Expenses is Fair
           and Reasonable .......................................................................................... 19

        E.  The Proposed Awards to Lead Plaintiffs David Ducharme and Sam Snyder
           and Proposed Class Representative Vianey Manriquez are Reasonable
           and Modest.................................................................................................. 21

CONCLUSION.............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Abel v. Town Sports Int'l, LLC*,
No. 09-cv-10388, 2012 U.S. Dist. LEXIS 183444 (S.D.N.Y. Dec. 18, 2012) ......................... 5

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
955 F.3d 254 (2d Cir. 2020)....................................................................................................... 14

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).................................................................................................................... 20

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985).................................................................................................................... 20

*Blum v. Stenson*,
465 U.S. 886 (1984)................................................................................................................. 5, 6

*Burns v. Falconstor Software, Inc.*,
No. 10-cv-4632, 2014 U.S. Dist. LEXIS 203061 (E.D.N.Y. Apr. 10, 2014) ......................... 17

*Di Giacomo v. Plains All Am. Pipeline*,
No. 99-cv-4137, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001)............................ 19

*Fogarazzo v. Lehman Bros. Inc.*,
No. 03-cv-5194, 2011 U.S. Dist. LEXIS 17747 (S.D.N.Y. Feb. 23, 2011)............................ 17

*Goldberger v. Integrated Res.*,
209 F.3d 43 (2d Cir. 2000).............................................................................................. 6, 7, 19

*Gross v. GFI Grp. Inc.*,
310 F. Supp. 3d 384 (S.D.N.Y. 2018)....................................................................................... 14

*Hicks v. Morgan Stanley & Co.*,
No. 01-cv-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005)........................... 25

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................................... 12

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
No. 05-cv-0232, 2008 U.S. Dist. LEXIS 95437 (E.D. Pa. Nov. 21, 2008) ............................... 3

*In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*,
No. 02-cv-5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .............................. 10

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014)....................................................................................................... 25

*In re Cardinal Health Inc. Sec. Litigs.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ....................................................................................... 5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................................... 5

*In re Cendant Corp. Prides Litig.*,
  51 F. Supp. 2d 537 (D.N.J. 1999), *vacated and remanded*,
  243 F.3d 722 (3d Cir.2001), *on remand*, No. 98-2819 (D.N.J. June 11, 2002) ....................... 18

*In re Cendant Corp. Sec. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................................................ 3

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................................ 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .................... 18, 22

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) .................... 20, 22

*In re Fuqi Int'l, Inc. Sec. Litig.*,
  No. 10-cv-2515, 2016 U.S. Dist. LEXIS 20514 (S.D.N.Y. Feb. 19, 2016) ............................ 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................................ 24

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 12, 24

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  No. 10-cv-3461, 2015 U.S. Dist. LEXIS 128856 (S.D.N.Y. Sep. 24, 2015) ........................ 14

*In re Ikon Office Solutions v. Stuart*,
  194 F.R.D. 166, (E.D. Pa. 2000) .................................................................................... 10, 19

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04-cv-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................... 24

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ......................... 7

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................................ 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ............................................................................................... 14

*In re PaineWebber Ltd. P'Ships Litig.*,
  No. 94-cv-8547, 2003 U.S. Dist. LEXIS 13377 (S.D.N.Y. Aug. 4, 2003) ............................. 9

*In re Prudential Sec. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) ...................................................................................... 13

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) .................................................................................. 18

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ............................................................................................ 7, 22

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  461 F. Supp. 2d 383 (D. Md. 2006) ...................................................................................... 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16-cv-06728, 2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020)............. 15, 16, 19

*In re Smith Barney Transfer Agent Litig.*,
   No. 05-cv-7583, 2011 U.S. Dist. LEXIS 144351 (S.D.N.Y. Dec. 15, 2011) ........................... 5

*In re Telectronics Pacing Sys. Accufix Atrial "J" Lead Products Litig.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ..................................................................... 10

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................. 6, 12

*In re Veeco Instruments Secs. Litig.*,
   No. 05-md-1695, 2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ........................... 10

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................... 20

*In re Xcel Energy, Inc., Sec, Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................... 18

*Khait v. Whirlpool Corp.*,
   No. 06-cv-6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ............................. 17

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................... 10, 16, 18

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06-cv-4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ........................... 17

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992)........................................................................ 21

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185, 197 (S.D.N.Y. 1997).................................................................. 19

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).................................................................... 12

*Taft v. Ackermans*,
   No. 02-cv-7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ............................. 21

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   No. 01-cv-11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ...................... 12, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...................................................................................... 20

*Wal-mart Stores Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................ 6

**Statutes**

15 U.S. C. § 78u-4(a)(6) ................................................................................. 4, 6

15 U.S.C. § 78u-4(a)(3)(B)(v) .............................................................................. 5

15 U.S.C. § 78u-4(a)(4) ................................................................................... 24

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.A.A.N. 730 .................................. 4

Janeen McIntosh & Svetlana Starykh,
   *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*,
   NERA ECONOMIC CONSULTING (12 Feb. 2020) ...................................................................... 17

Lead Counsel Kahn Swick & Foti, LLC ("Lead Counsel"), with the approval of the Court-appointed Lead Plaintiffs David Ducharme, Sam Snyder, and Julia Ann Snyder ("Lead Plaintiffs"), as well as proposed Class Representative Vianey Manriquez, respectfully submit this memorandum in support of their motion for an award of attorneys' fees and for reimbursement of litigation expenses.

## PRELIMINARY STATEMENT

In consideration of Lead Counsel's efforts and the recovery obtained for the Class in light of the significant risks discussed herein, Lead Counsel respectfully moves the Court for: (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund; and (ii) reimbursement of expenses reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action in the amount of $110,000, plus interest.

The Settlement provides for payment of $1,600,000 to the Class.[1] The Settlement of $1,600,000 represents a recovery of approximately 12.8% of the maximum recoverable damages (approximately $12.5 million, as determined by Plaintiffs' damages consultants), a strong result for the Class.[2] This recovery would not have been possible without the skill, diligence, and advocacy of Lead Counsel, who devoted much of their time and effort to the investigation,

---

[1] For the purposes of Settlement, the Class is defined as all persons or entities who purchased or otherwise acquired Intellipharmaceutics International Inc. ("IPCI" or "the Company") common stock at any time from May 21, 2015 through and including July 27, 2017 (the "Class Period") excluding Defendants, members of their immediate families, and their legal representatives, heirs, successors or assigns.

[2] Despite Defendants' tenuous cash position, Lead Counsel was nevertheless able to negotiate, and the Parties entered into, a "Contribution Agreement," such that the Settlement Fund will be augmented by an additional, possible contribution of certain Canadian tax reimbursements up to $400,000 in the event IPCI receives those reimbursements within 547 days after the date of entry of the Final Judgment. *See* Contribution Agreement, Dkt. No. 58-6. In the event IPCI makes a payment to the Settlement Fund pursuant to the Contribution Agreement, Lead Counsel expects to move for an award for attorneys' fees amounting to 30% of any such contribution amount.

vigorous prosecution, and settlement of this Action on a wholly contingent basis.[3] Under Lead Counsel's applicable billable rates, the requested attorneys' fees of 30% of the Settlement Fund represent a fractional lodestar multiplier of just 0.45, representing a tremendous value to the Class.

The Settlement was reached at a time when Lead Counsel had a strong understanding of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement. In light of the considerable risks presented in this litigation, the Settlement is a significant recovery for the Class. As in any complex litigation of this type, Plaintiffs faced various significant obstacles in proving liability and damages and in certifying the Class. The case was stayed in connection with pending mediation shortly after Lead Plaintiffs filed their motion for class certification. Defendants would have vigorously argued against Lead Plaintiffs' class motion, likely by attempting to demonstrate a lack of price impact and by challenging Lead Plaintiffs' adequacy to serve as class representatives. While Lead Counsel is confident in their arguments, a favorable ruling on class certification was far from certain. And, even if Plaintiffs prevailed, Defendants would likely petition the Second Circuit for permission to appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. Additionally, if the Class obtained certification, it is well-settled that class certification can be revisited at any time either upon a proper motion of a party or by the Court. The Class also faces the risk that Defendants could prevail at summary judgment or trial. Defendants' success at any of these stages could result in *zero* recovery for the Class.

Lead Counsel KSF is extremely experienced in the prosecution of federal securities class actions, respectfully submits that the Settlement is a testament to its hard work and the quality of

---

[3] *See generally* Declaration of Kim E. Miller ("Miller Decl.") filed along with this motion and Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds ("Final Approval Motion").

legal representation. Given the recovery obtained, the amount and complexity of the work involved during the pendency of the litigation, the skill and expertise required to prosecute and resolve the claims asserted, and the substantial risks that Lead Counsel undertook in this Action, Lead Counsel respectfully submits that the 30% fee request is fair and reasonable. This fee request was reduced by Lead Counsel from its retainer agreement with Lead Plaintiffs and the Notice of Pendency sent to Class Members, which both allowed for attorneys' fees of up to 33 1/3%. It represents a fractional multiplier of 0.45 the total lodestar value of the time that Lead Counsel dedicated to this Action. Furthermore, Lead Counsel submits that the request of reimbursement of expenses in the amount of $110,000 is fair and reasonable and warrants approval from the Court.

Notably, following dissemination of over 12,528 Notice packets that indicate that Lead Counsel will submit a request for attorneys' fees of up to 33 1/3% of the Net Settlement Fund and reimbursement of expenses of up to $110,000, not a single objection has been filed challenging Lead Counsel's fee and reimbursement request. The deadline to object was October 16, 2020. Class Members' lack of objection supports Lead Counsel's fee and expenses request, which is under the request indicated in the Notice documents.

Lead Counsel recognizes that, despite its efforts and achievements on behalf of the Class, "[i]t is important to avoid awarding 'windfall fees' and any appearance of having done so for the integrity of the judicial system, legal profession and Rule 23." *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-cv-0232, 2008 U.S. Dist. LEXIS 95437, at *36 (E.D. Pa. Nov. 21, 2008). Furthermore, Lead Counsel appreciates that the "Court has an 'independent obligation to ensure the reasonableness of any fee request," *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 281-82 (3d Cir. 2001), and that this Court takes this obligation seriously. As set forth herein, Lead Counsel respectfully submits that its fee request of 30% of the $1,600,000 recovery is eminently

reasonable, especially in light of the unique legal obstacles presented and significant result achieved in this case. *See* 15 U.S.C. § 78u-4(a)(6).

## HISTORY AND BACKGROUND OF THE CASE

The Court is respectfully referred to the accompanying Declaration of Kim E. Miller in Support of Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Lead Plaintiffs' Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Award to Lead Plaintiffs and Proposed Class Representative (the "Miller Decl."), incorporated herein by reference, for a more detailed history of the litigation and the factors bearing on the reasonableness of the Settlement, Plan of Allocation, and fee request.

## ARGUMENT

I.   **LEGAL STANDARDS**

   A.   **Award of Attorneys' Fees under the PSLRA**

      1.   The PSLRA's Framework for the Selection of Lead Plaintiff and Lead Counsel

The Private Securities Litigation Reform Act of 1995 ("PSLRA") created certain mechanisms to "ensure the protection of class members' interests in securities litigation." H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.A.A.N. 730, 733. "In contrast to the usual method of naming lead counsel the first attorney to file suit, the PSLRA scheme allows the lead plaintiff to vet and select lead counsel from a pool of qualified attorneys, which should better assure the Court that 'counsel selection and retention were done in the bests interests of the class.'" *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 758 (S.D. Ohio 2007) (quoting *Cendant Corp.*, 264 F.3d at 282); *see also In re Smith Barney Transfer Agent Litig.*, No. 05-cv-7583, 2011 U.S. Dist. LEXIS 144351, at *12 (S.D.N.Y. Dec. 15, 2011); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Indeed, the lead plaintiff has a duty under the PSLRA to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

Because of the protections "embedded [for the class] in the PSLRA…courts 'should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and properly-selected lead counsel.'" *Cardinal Health*, 528 F. Supp. 2d at 758. Here, Lead Plaintiffs and Lead Counsel negotiated and entered into a retainer agreement for the benefit of the Class authorizing Lead Counsel to request up to 33 1/3% of the recovery as attorneys' fees. The present 30% fee request is less than the percentage negotiated ex ante with Plaintiff, further reflecting the reasonableness of Lead Counsel's requested fee. *See* Miller Decl. at ¶ 67.

2.      The Second Circuit and the PSLRA Support the Percentage of Recovery Approach for Awarding Fees in Common Fund Cases

The party seeking attorneys' fees "bears the burden of demonstrating that its requested fees are reasonable." *Abel v. Town Sports Int'l, LLC*, No. 09-cv-10388, 2012 U.S. Dist. LEXIS 183444, at *88 (S.D.N.Y. Dec. 18, 2012) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). There are two common methods in which courts determine whether attorneys' fees are reasonable. In the percentage method, the "court sets some percentage of the recovery as a fee." *Goldberger v. Integrated Res.*, 209 F.3d 43, 47 (2d Cir. 2000). An alternative method of fee calculation is the lodestar method, under which "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* The percentage method is supported by, and indeed codified by, the PSLRA. *See* 15 U.S.C. § 78u-4(a)(6); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006) ("The PSLRA limits any award of attorneys' fees and expenses to a 'reasonable percentage' of any recovery."). Thus, the prevailing standard in this Circuit, and for common fund cases generally, is the percentage method. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008) ("Congress plainly contemplated that percentage-of-recovery would be

5

the primary measure of attorneys' fees awards in federal securities class actions."); *Blum*, 465 U.S. at 903 n.16 (noting that in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Wal-mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting that "[t]he trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation'") (citations omitted). However, the Second Circuit "encourages using the lodestar method…as a cross-check for the percentage method." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953, at *43 (S.D.N.Y. Dec. 23, 2009) (citing *Goldberger*, 209 F.3d at 50). Consistent with the prevailing trend in the Second Circuit, Lead Counsel requests that the Court award attorneys' fees based on a reasonable percentage of the fund.

> **B.**     **The Requested Fee Percentage Is Reasonable Under the Percentage Method, a Lodestar Cross-Check, and the *Goldberg* Factors**

When determining whether attorneys' fees are reasonable, "district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (internal quotation marks omitted). The *Goldberger* factors "need not be applied in a formulaic way" because each case is different and "in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). Lead Counsel respectfully submits that an analysis of the foregoing *Goldberger* factors demonstrates that Lead Counsel's present fee and expense request is reasonable and appropriate and should be approved by the Court.

> **1.**     <u>The Fee is Justified by the Time and Labor Expended by Counsel</u>

A review of the time and effort expended by Lead Counsel establishes that the requested

fee is justified. Lead Counsel has devoted a significant amount of time and resources to the research, investigation, and prosecution of this Action, resulting in an excellent recovery for the Class without the substantial expense, risk, and delay of continued litigation. This Settlement was reached at a point when Lead Counsel had committed extensive resources to understanding the facts and challenges posed by the claims and defenses that could impact any recovery for the Class.

Lead Counsel has spent over 1,599 hours researching, investigating, and prosecuting this case on behalf of the Class for an aggregate lodestar of $1,065,712.50, and have incurred some $116,851.09 in expenses (despite only seeking reimbursement of such expenses in the amount of $110,000). During the course of this Action, as explained in more detail in the Miller Declaration, Lead Counsel: (a) researched the facts and claims that formed the basis of the initial complaint; (b) researched, briefed, and successfully argued their Motion to Consolidate Cases; to be Appointed Lead Plaintiffs and to Approve Lead Plaintiffs' Choice of Counsel; (c) conducted an extensive investigation into the underlying facts, including hiring investigators to interview a number of confidential witnesses; (d) thoroughly researched the law pertinent to the Class members' claims and the Defendants' defenses; (e) prepared and filed the 70-page Amended Class Action Complaint for Violations of the Federal Securities Laws; (f) successfully opposed Defendants' motion to dismiss; (g) negotiated and executed a discovery protocol regarding the production of Electronically Stored Information ("ESI") and paper document and a search methodology for ESI; (h) carefully reviewed approximately 3,800 pages of documents produced by Defendants in discovery; (i) worked with expert economists and causation and damages consultants to analyze Plaintiffs' claims; (j) extensively researched, prepared, and filed Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel, which entailed retaining expert economist Chad Coffman, CFA to author a report on

market efficiency; (k) submitted mediation briefs and answered questions from mediator Michelle Yoshida of Phillips ADR in advance of the mediation; (l) engaged in a formal mediation facilitated by Ms. Yoshida where the Parties presented their positions to the other side; (m) reached an agreement in principal to settle the litigation as to all Defendants and all claims; (n) worked with Defendants to prepare a Memorandum of Understanding and Stipulation of Settlement; (o) sought and evaluated competitive bids from multiple claims administrators for administration of this Settlement; (p) prepared and filed the motion for preliminary approval and stipulation of settlement, which was approved by this Court on July 30, 2020; (q) prepared and oversaw the publication of the Summary Notice of Pendency of Class Action in the *Investor's Business Daily* and over the *PR Newswire* on August 17, 2020; and (r) oversaw the settlement administration process, including, *inter alia*, the mailing of the Notice and Claim Form, supplying the Notice and Claim Form to the Class, notifying brokerage firms or other nominee accounts of the appropriate manner to provide individual notice to Class members, tracking requests for exclusion, and assisting shareholders with questions regarding the criteria for recovery and the procedure for filing claims.

The work performed by Lead Counsel was divided among partners, associates, and paralegals. As demonstrated by the lodestar table attached to the Miller Declaration, the laboring oar was carried by junior members of the firm, and therefore the majority of Lead Counsel's lodestar is attributable to associates with lower billing rates. Moreover, Lead Counsel has reduced rates for attorney travel time in accordance with customary practice within this District, *see In re PaineWebber Ltd. P'Ships Litig.*, No. 94-cv-8547, 2003 U.S. Dist. LEXIS 13377, at *14 (S.D.N.Y. Aug. 4, 2003) ("[W]hen determining attorneys' fees, courts in the Southern District of New York…customarily reduce the amount awarded for travel to at least 50% of that rate."), and also

excluded any attorney time related to Lead Counsel's request for fees and reimbursement of expenses. *See* Miller Decl. at ¶ 65. Thus, Lead Counsel submits that because the time spent on this case accurately reflects the work performed, tasks were appropriately delegated, and billing rates were reasonable and appropriately discounted, the first *Goldberger* factor supports Lead Counsel's fee request.

      2.    <u>The Fee is Supported by the Magnitude and Complexity of the Litigation</u>

Consideration of the second *Goldberger* factor reveals that the legal complexities of this securities class action support Lead Counsel's fee request. "Most class actions are inherently complex and settlement avoids the costs, delays, and a multitude of other problems associated with them." *In re Telectronics Pacing Sys. Accufix Atrial "J" Lead Products Litig.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (citation omitted). Courts within this Circuit have found securities actions particularly complex within the class action arena. *See In re Veeco Instruments Secs. Litig.*, No. 05-md-1695, 2007 U.S. Dist. LEXIS 85554, at *18 (S.D.N.Y. Nov. 7, 2007) ("A securities case, "by its very nature, is a complex animal.") (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002)). Furthermore, courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions v. Stuart*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); s*ee also In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, No. 02-cv-5575, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated…where a number of controlling decisions have recently shed new light on the standard for loss causation.").

This case is no different. In addition to the complicated issues present in all securities class

actions – including whether Defendants made misstatements with the requisite strong inference of scienter, whether the market in which IPCI securities were traded was efficient, and how to calculate damages – this case involves complex issues related to the FDA approval process for a novel drug. *See* Miller Decl. at ¶ 35. While Lead Counsel is confident in Plaintiffs' position on each of these issues, the outcome was far from certain. The complexity of the issues in this case is apparent from the Court's Opinion and Order on Defendants' motion to dismiss. In a well-reasoned, 27-page opinion, the Court neither fully granted nor fully denied Defendants' motion, holding that some categories of Defendant's statements about the approval process for IPCI's new drug, Rexista, were actionable misstatements under Section 10(b), and others were not. *See* Dkt. No. 35.

Absent the Settlement, Defendants also would have vigorously opposed Plaintiffs' motion for class certification and undoubtedly would have filed a motion for summary judgment. Discovery would have proceeded beyond the limited Phase I searches already completed and likely would have required Lead Counsel to review thousands of documents and to conduct a number of depositions, both in the United States and in Canada, requiring substantial additional time and expense. Additionally, these complex issues would have required Plaintiffs and Defendants to retain and work with expert witnesses, both at the Class Certification and merits stages of the Action. Qualified expert witnesses regularly cost in the tens of thousands of dollars–more if testimony at trial is required– an expense which Settlement would allow the class to largely avoid.

Had this case proceeded to trial, both Parties' arguments would be potentially difficult for jurors to understand, given the complex legal issues surrounding liability and damages. Furthermore, trial would have been very expensive for the Class. The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous

documentary and deposition evidence, vigorously contested motions, and considerable expenditures of judicial resources. Moreover, "even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003).

Taken together, the foregoing factors regarding the complexity of this securities class action support the conclusion that the requested fee is reasonable and fair.

### 3.   The Risk of Litigation Supports the Requested Fee

The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004); s*ee also Telik*, 576 F. Supp. at 592 ("Courts have repeatedly recognized 'that the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions."). Courts in this Circuit have long recognized that the risk associated with a case bears heavily upon the determination of an appropriate fee award. *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) ("[It is] appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award."). The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-cv-11814, 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

From the beginning, Lead Counsel understood that they were embarking on a complex,

expensive litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff, investigators, and consultants, and to pay for the considerable out-of-pocket costs which a case such as this one entails. *See* Miller Decl. at ¶ 73. Because of the nature of a contingent practice whose cases are predominantly complex, often lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. *Id.*

In addition to advancing litigation expenses, Lead Counsel faced the possibility that it would receive no attorneys' fees in the event that Defendants succeeded at any one of many possible junctures in the litigation. Defendants likely would have vigorously opposed Class Certification, most likely by challenging market efficiency, price impact, and Lead Plaintiffs' and the proposed Class Representatives adequacy and typicality. Even if the Class obtained certification, Defendants would likely petition the Second Circuit for permission to appeal that decision pursuant to Rule 23(f), which could result in substantial delays in resolution of the litigation.

The recent case of *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc. ("Goldman II")*, 955 F.3d 254 (2d Cir. 2020) is instructive on this point. There, the district court originally granted plaintiffs' motion for class certification on September 24, 2015. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-3461, 2015 U.S. Dist. LEXIS 128856, at *25 (S.D.N.Y. Sep. 24, 2015). Defendants challenged the district court's order by appealing to the Second Circuit on a Rule 23(f)

petition not once, but *twice*. On April 7, 2020, some four and a half years after the district court originally granted plaintiffs' motion for class certification, the Second Circuit entered its order denying defendants' petition and sustaining the district court's order certifying the class. *See Goldman II*, 955 F.3d at 258. On August 21, 2020, defendants filed a petition for certiorari, which petition is still pending with the Supreme Court. The danger of a protracted delay at the class certification stage is very real.

Additionally, Defendants almost certainly would have moved for summary judgment. Securities cases that have survived a motion to dismiss have later been defeated on scienter and/or loss causation grounds at summary judgement. *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 514 (2d Cir. 2010) (affirming district court's order granting summary judgment in favor of defendants on the issue of loss causation after certifying the class); *Gross v. GFI Grp. Inc.*, 310 F. Supp. 3d 384, 395 (S.D.N.Y. 2018) (granting defendants' motion for summary judgment on the issue of scienter after certifying the class). If the Court would have adopted Defendants' arguments at either the class certification or summary judgment stages, the Class could have potentially recovered nothing.

In order for the Class to recover the maximum $12,500,000 in damages estimated by Plaintiffs' expert, Plaintiffs would need to prevail on each and every one of the claims alleged, and for the entire Class. Notwithstanding this fact, the jury would also have to adopt Plaintiffs' expert's damages analysis over Defendants' expert's analysis, and such expert battles are rarely predictable. *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-06728, 2020 U.S. Dist. LEXIS 128998, at *33 (S.D.N.Y. July 21, 2020) ("There is no way to predict with any certainty which expert's opinions [regarding damages] the jury would have accepted."). Thus, even if Plaintiffs prevailed as to liability at trial, the judgment could possibly reflect only a fraction of the damages claimed. And

even that judgment would not be certain, as an inevitable appeal presents an additional risk as well as delay of any monetary benefit to the Class. Moreover, were the litigation to move forward, Defendants would likely exhaust their coverage under pertinent insurance agreements and may be unable to maintain their defense or fund any judgment. Despite these risks, Lead Counsel obtained a Settlement of a substantial percentage – 12.8% -- of Plaintiff's expert's total calculation of damages of $12.5 million.

Lead Counsel respectfully submits that the significant risks of obtaining class certification and establishing liability and damages support the award of attorneys' fees.

4.     The Quality of Representation Supports the Requested Fee

In evaluating the fourth *Goldberger* factor, the "quality of representation," courts in the Second Circuit "review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). Lead Counsel practices extensively in complex federal civil litigation, particularly the litigation of securities class actions, and has successfully litigated these types of actions in courts throughout the country. *See* Miller Decl. at ¶ 70; Exhibit E. The quality of representation is also evidenced by the favorable results achieved in the proposed settlement. *See Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *59 ("The quality of [Lead Counsel's] representation is evidenced by the quality of the result achieved."). To achieve a $1,600,000 settlement in this Action, despite Defendants' strong arsenal of arguments, took a great deal of legal acumen and negotiating skill.

Further, "[c]ourts have recognized that the quality of the opposition should also be taken into consideration in assessing the quality of the counsel's performance." *Id.*; *see also Maley*, 186 F. Supp. 2d at 373 (noting that the quality and vigor of opposing counsel is a significant consideration when determining the quality of services provided by plaintiffs' counsel). Here, Defendants were represented by DLA Piper LLP, a highly skilled firm with a reputation for

vigorous advocacy in the defense of complex civil cases, particularly securities class actions. In light of the experience and sophistication of defense counsel, this Settlement represents a highly favorable result for the Class, one that is attributable to the diligence, determination, hard work, and reputation of Lead Counsel, who developed, litigated, and successfully negotiated the Settlement. Accordingly, the quality of representation factor weighs heavily in favor of supporting Lead Counsel's fee request.

5.   The Requested Fee is Reasonable in Relation to the Settlement

The fee requested in this case -- 30% of the proposed Settlement Fund -- is reasonable and falls in line with fee awards in other cases which settled for less than $10 million in this Circuit. *See, e.g.*, *In re Fuqi Int'l, Inc. Sec. Litig.*, No. 10-cv-2515, 2016 U.S. Dist. LEXIS 20514, at *28 (S.D.N.Y. Feb. 19, 2016) (approving attorneys' fees of 33% of $7.5 million settlement fund in securities litigation prior to motion to dismiss); *Burns v. Falconstor Software, Inc*., No. 10-cv-4632, 2014 U.S. Dist. LEXIS 203061, at *22 (E.D.N.Y. Apr. 10, 2014) (awarding 33.3% of $5 million settlement); *Fogarazzo v. Lehman Bros. Inc*., No. 03-cv-5194, 2011 U.S. Dist. LEXIS 17747, at *2 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *Khait v. Whirlpool Corp*., No. 06-cv-6381, 2010 U.S. Dist. LEXIS 4067, at *22 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-cv-4270, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 settlement and collecting Second Circuit cases with similar awards). Moreover, NERA Economic Consulting found that from 2010-2019, the median attorneys' fees by percentage of settlement was 30% for cases settled for less than $5 million. Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting (12 Feb. 2020).

A lodestar cross-check confirms the reasonableness of the requested attorneys' fee. Under

Lead Counsel's applicable billable rates at 1,599.7 total hours, the requested $480,000 attorney fee represents a fractional lodestar multiplier of just 0.45. This "multiplier" is well within the range commonly approved by district courts in this Circuit. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 369 (noting that 33 1/3% of $11.5 million settlement "will amount to a multiplier of 4.65, well within the range awarded by courts in this Circuit and courts throughout the country."); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 374 (S.D.N.Y. 2013) (approving 2.8 lodestar multiplier); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at *54 (S.D.N.Y. July 27, 2007) (holding that lodestar multiplier of 2.48 "is within the range found to be reasonable by courts that have used lodestar cross checks in complex class actions with outstanding results in the face of substantial risks") (citing *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005)) (multiplier of 6.96); *In re Xcel Energy, Inc., Sec, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) (multiplier of 4.7); *In re Cendant Corp. Prides Litig.*, 51 F. Supp. 2d 537 (D.N.J. 1999), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98-2819 (D.N.J. June 11, 2002) (multiplier of 5.28); *Di Giacomo v. Plains All Am. Pipeline*, No. 99-cv-4137, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (multiplier of 5.3); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5). As attested in the Miller Declaration, moreover, Lead Counsel carefully reviewed and reduced time where deemed appropriate, such that 1,599.7 hours is a conservative calculation of the time spent by Lead Counsel on this Action. *See* Miller Decl. at ¶ 65.

The lodestar/multiplier analysis is to be used merely as a cross-check on reasonableness and should not form the starting point of the Court's review. Otherwise, the Court's approach would undermine the principles supporting the percentage approach and encourage litigants to needlessly build lodestar and potentially discourage timely, yet meaningful settlements. *See Ikon*,

194 F.R.D. at 196 ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent.").

Accordingly, the requested fee of 30% of the Settlement fund at a fractional lodestar multiplier of 0.45 is supported by other cases within this Circuit and elsewhere.

6.      Public Policy Considerations Support the Requested Fee

Lead Counsel respectfully submits that public policy considerations—the sixth and final *Goldberger* factor—support Lead Counsel's fee request of 30% of the $1,600,000 Settlement Fund. *See Goldberger*, 209 F. 3d at 50. Courts in the Second Circuit have held that a "strong public policy concern exists for rewarding firms for bringing successful securities litigation." *Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *60 (citing *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702, at *86 (S.D.N.Y. Nov. 5, 2010)). Furthermore, "[i]n order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005). The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).

Plaintiffs' counsel in these types of cases are typically retained on a contingent basis, largely due to the huge commitment of time and expense required. The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated would be able to exploit these efforts at no cost or risk to themselves. *See Taft v. Ackermans*, No. 02-cv-7951, 2007 U.S. Dist. LEXIS 9144, at *33 (S.D.N.Y. Jan. 31, 2007) ("'[T]he class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action.'") (citation omitted). Furthermore, the significant expense, combined with the high degree of uncertainty of ultimate success, means that contingent fees are virtually the only means of recovery in such cases. Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'" *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992). Thus, "public policy favors the granting of [attorney] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id.*

Where, as here, Lead Counsel assumed substantial risk in undertaking this action and achieved a significant benefit to the Class, an important public policy is served by awarding attorneys' fees that adequately compensate counsel. Lead Counsel respectfully submits that the requested fee of 30% of the Settlement Fund adequately compensates Lead Counsel for its time, effort, risk undertaken, and particularly meaningful achievements in this case.

### C.  The Class's Reaction to the Fee Request

The positive reaction of the Class following the dissemination of the Court-prescribed Notice and Claim form and publication of Summary Notice, which advised the Class that Lead Counsel would seek a higher fee than Lead Counsel currently seeks, further supports Lead

Counsel's fee request. The Notice explains to Class Members that Lead Counsel will submit a request for attorneys' fees of up to 33 1/3% of the Net Settlement Fund; however, Lead Counsel has limited its requested fee to 30% of the Net Settlement Fund. In accordance with the Preliminary Approval Order, on or before August 13, 2020, the Court-appointed Claims Administrator, Rust Consulting, Inc. ("Rust"), mailed the Notice and Claim Form to Class Members identifiable from depository transfer agent records and to brokers and nominees, and published the Summary Notice in *Investor's Business Daily* and over the *PR Newswire* on August 17, 2020. *See* Initial Rabe Decl., Dkt. No. 63-1 at ¶ 6. As of November 20, 2020, Rust has mailed 12,528 Notice packets and received 147 Proofs of Claim. *See* Supplemental Declaration of Jason Rabe, Exhibit D to Miller Decl. ("Suppl. Rabe Decl."), at ¶¶ 3, 8.

As of the October 16, 2020 deadline for submitting objections to the Notice, not a single objection has been filed challenging either the Settlement or Lead Counsel's fee and reimbursement request of up to 33 1/3% of the Net Settlement Fund, and to date no valid request for exclusion has been received. *Id.* at ¶¶ 6-7. Although the November 30, 2020 deadline to request to be excluded has not yet passed, Class Members' lack of objection thus far supports Lead Counsel's fee and expenses request, which is well under the request indicated in the Notice documents. "[S]uch a low level of objection is a 'rare phenomenon.'" *Rite Aid*, 396 F.3d at 305 (citation omitted). Accordingly, the Class's reaction to the Settlement evidences the inherent fairness of the fee request.

### D.    Lead Counsel's Request for Reimbursement of Expenses is Fair and Reasonable

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *86. "Courts in the Second Circuit normally grant expense requests in common fund

cases as a matter of course." *In re EVCI*, 2007 U.S. Dist. LEXIS 57918, at *57. In the Notice disseminated to the Class, Lead Counsel stated that it would not seek reimbursement of expenses in excess of $110,000. *See* Dkt. No. 63-2 at 3. Lead Counsel respectfully requests reimbursement of expenses in the amount of $110,000, which were reasonably incurred during the prosecution of this Action, and which is an amount less than that the reasonable expenses actually incurred by Lead Counsel. *See* Miller Decl. at ¶ 84. Those charts setting forth the expenses are reproduced here below:

| Category: | Total:[4] |
|---|---|
| Computerized Legal Research | $2,241.04 |
| Experts/Consultants | $71,258.75 |
| Investigators | $10,287.50 |
| Mediation | $10,500.00 |
| Messengers/Couriers/Overnight Delivery | $187.03 |
| Photocopies and Printing | $3,482.00 |
| Filings Fees/PACER/PLSRA Notice | $480.00 |
| Transportation | $2,004.09 |
| Hotels | $8,416.00 |
| Meals | $994.68 |
| **Total Expenses Incurred by Lead Counsel:** | **$109,851.09** |

| Lead Plaintiff/Proposed Representative: | Proposed Award: |
|---|---|
| David Ducharme | $3,000.00 |
| Sam Snyder | $3,000.00 |
| Vianey Manriquez | $1,000.00 |
| **Total:** | **$7,000.00** |

The expenses incurred here reflect the costs necessary to litigate a complex securities action.[5] The bulk of Lead Counsel's expenses derive from professional services rendered by

---

[4] Excluding the modest proposed awards of $7,000 that go directly to Lead Plaintiffs David Ducharme and Sam Snyder and proposed Class Representative Vianey Manriquez, Lead Counsel's expenses are only $109,981.09, within the noticed expense cap of $110,000.

[5] Additional Plaintiffs Guy Braverman and Eric Ludwig are represented by Pomerantz LLP ("Pomerantz"). Pursuant to a fee sharing arrangement with Lead Counsel and subject to the Court's

Plaintiffs' market efficiency expert, its consultants, investigators, and the costs of mediation, which were all critical to Plaintiffs' success in achieving the proposed Settlement. The remaining expenses are attributable to computerized legal research, copying costs, travel, delivery costs, filing fees, and other incidental expenses incurred in the ordinary course of litigation. These expenses are typical of a class action and reimbursable under applicable case law. *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys…[and] [f]or this reason, they are properly chargeable to the Settlement Fund."). *See also Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *17. Lead Counsel has carefully reviewed its expenses to ensure that they were reasonably incurred and necessary to furthering the interests of the Class during the course of the litigation. Accordingly, Lead Counsel respectfully submits that its reimbursement of expenses in the amount of $110,000 should be granted.

### E. The Proposed Awards to Lead Plaintiffs David Ducharme and Sam Snyder and Proposed Class Representative Vianey Manriquez are Reasonable and Modest

A plaintiff may be compensated for the time he has spent overseeing a case. *See, e.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04-cv-8144, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Congress, in fact, intended to grant courts discretion to approve awards in appropriate cases. Courts in the Second Circuit "routinely award such costs and expenses

---

approval, Pomerantz will receive up to 30% of any attorneys' fees awarded by the Court. The fractional multiplier of 0.45 includes time spent by Lead Counsel in this litigation only.

both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071, 2005 U.S. Dist. LEXIS 24890, at *30 (S.D.N.Y. Oct. 19, 2005); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000).

Lead Plaintiffs David Ducharme and Sam Snyder have each devoted a substantial amount of time to this Action. Lead Plaintiffs David Ducharme and Sam Snyder spent time: (i) reviewing IPCI's SEC filings; (ii) reviewing case-related documents and correspondence with Lead Counsel; (iii) reviewing and editing the Amended Complaint; (iv) commenting on Defendants' motion to dismiss and their opposition thereto; and (v) gathering documents for production. *See* Miller Decl. at ¶ 92; Declarations of David Ducharme and Sam Snyder (attached to the Miller Decl. at Exhibit A and B). Thus, Lead Plaintiffs David Ducharme and Sam Snyder request payments to reimbursement them for the considerable time they spent on this Action in the amount of $3,000 each.

Proposed Class Representative Vianey Manriquez also spent time: (i) reviewing case-related documents and correspondence with Lead Counsel; (ii) reviewing Plaintiffs' motion for class certification and related briefing; and (iii) gathering documents for production. *See* Miller Decl. at ¶ 92; Declaration of Vianey Manriquez (attached to the Miller Decl. at Exhibit C). Thus, proposed Class Representative Vianey Manriquez requests payment to reimburse her for the time she spent on this Action in the amount of $1,000.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that this Court grant Lead

Counsel's request for an award of attorneys' fees of 30% of the Settlement Fund plus reimbursement of expenses in the amount of $110,000, plus interest on both amounts, as provided for by 15 U.S.C. §78u-4(a)(b).

DATED: November 20, 2020                    Respectfully submitted,

                                            **KAHN SWICK & FOTI, LLC**

                                            */s/ Kim E. Miller*
                                            Kim E. Miller (NY-6996)
                                            250 Park Avenue, 7th Floor
                                            New York, NY 10177
                                            Telephone: (212) 696-3730
                                            Fax: (504) 455-1498
                                            kim.miller@ksfcounsel.com

                                            -and-

                                            Lewis S. Kahn
                                            Craig J. Geraci, Jr.
                                            1100 Poydras Street, Suite 3200
                                            New Orleans, LA 70163
                                            Telephone: (504) 455-1400
                                            Fax: (504) 455-1498
                                            lewis.kahn@ksfcounsel.com
                                            craig.geraci@ksfcounsel.com

                                            *Lead Counsel for Lead Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2020, I filed the foregoing upon all counsel of record by using the CM/ECF system. The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF).

                                            */s/ Kim E. Miller*
                                            Kim E. Miller